A93A1503. STARGEL v. THE STATE.
(436 SE2d 786)

POPE, Chief Judge.

Defendant was convicted by a jury on two counts of aggravated child molestation and acquitted on two counts of aggravated sodomy.

M. S., defendant's five-year-old grandson, told his mother that J. W., M. S.'s nine-year-old cousin, and N. S., his ten-year-old uncle (defendant's son), had "stuck their joober in my butt," meaning they had engaged in anal intercourse with him. After a doctor's physical exam showed that M. S.'s rectum was stretched to the point that two fingers could be easily inserted without hurting him, his mother asked him if any adults were involved. When M. S. was silent and appeared scared, she told him she would name some names and he should stop her if she named anyone who was involved. She first named her own father, her stepfather and a cousin of M. S.'s father, and M. S. did not respond. Then she named "Papa Billy," M. S.'s name for defendant, and M. S. said, "(P)lease don't tell . . . he done it." Later, when M. S. and his mother were driving by defendant's house, M. S. pointed at some bushes and said, "Mom, that's where Papa Billy did that to me at." This was a spontaneous remark on M. S.'s part; his mother had not brought up the subject. M. S. also told Investigator Travis Brown, the deputy sheriff assigned to the case, that "Papa" had touched him in this way. Although there was some confusion as to which grandfather he was referring to, M. S. referred to the one who touched him as N. S.'s daddy and said he had a beard. Both of these descriptions fit defendant and do not fit the others M. S. calls "Papa." J. W. also testified that defendant had anal intercourse with him in the bushes at defendant's house, though he had previously told Investigator Brown that no adults were involved. J. W.'s school counselor testified that he had told her about this incident.

Defendant agreed to take a polygraph test and signed a stipulation providing that the results of the test could be used in court. The stipulation also provided that defendant could have a second, independent polygraph test, and that the results of the second test would also be admissible. When the results of the first test showed deception on the part of defendant, he made a motion for funds for an independent polygraph test, which was granted. However, the second test also showed that defendant was deceptive in answering relevant questions. Over defendant's objection, the State was allowed to introduce the results of both tests.

1. Viewing this evidence in the light most favorable to the verdict, it was sufficient to enable a rational trier of fact to find defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendant argues the trial court erred in allowing him only 12 peremptory challenges of potential jurors rather than 20. See OCGA § 15-12-165 (amended effective July 1, 1992 to reduce number of peremptory challenges for criminal defendant from 20 to 12). Because the charged offenses occurred prior to the effective date of the amendment, defendant contends the trial court's application of the amended version of OCGA § 15-12-165 in his case violated the constitutional prohibition against ex post facto laws. Although we have not addressed this exact question, numerous other jurisdictions have; and *all* have concluded, as did the trial court here, that the application of a law reducing the number of a criminal defendant's peremptory strikes is not an impermissible application of an ex post facto law because the change is procedural rather than substantive. See, e.g., *Simpson v. Wyrick*, 527 FSupp. 1144 (W. D. Mo. 1981), aff'd, 685 F2d 438 (8th Cir. 1982); *Haynes v. State*, 424 S2d 669 (Ala. Cr. App. 1982); *Schaefer v. Commonwealth*, 622 SW2d 218 (Ky. 1981); *State v. Smith*, 477 S2d 875 (La. App. 1985); *Commonwealth v. Whitfield*, 419 A2d 27 (Pa. Super. 1980). As we did in a similar case, "[w]e find the foreign authority persuasive and also note that the statutory amendment did not make criminal an act that was innocent when done, did not increase the punishment for a previously committed offense, and did not alter the rules of evidence. Nor did the amendment deprive the defendant of any substantive right available to him at the time of the offenses." *Aspinwall v. State*, 201 Ga. App. 203, 204 (410 SE2d 388) (1991) (where defendant requested trial at current term or next term of court pursuant to OCGA § 17-7-170 and statute setting terms of court was then amended, application of new statute to determine whether trial was timely had no ex post facto consequences). Defendant's reliance on *McSears v. State*, 247 Ga. 48 (2) (273 SE2d 847) (1981) and *Campbell v. State*, 178 Ga. App. 814 (4) (344 SE2d 745) (1986) is misplaced because those cases involved a change in the actual number of persons on the jury rather than a change in the procedure utilized to choose the jury. Accordingly, the trial court did not err in limiting defendant to 12 strikes in accordance with the version of OCGA § 15-12-165 in effect at the time of trial.

3. Defendant next contends that the trial court infringed his right not to incriminate himself when it compelled defendant to disclose information regarding the expert who gave him the second, independent polygraph test and allowed the State to call him as its witness. Because it will further the search for truth, our Supreme Court has held that the State is entitled to a copy of a scientific report by a

defendant's expert just as the defendant is entitled to a copy of a scientific report by the State's expert, and that the State may call the defendant's expert as a witness if the defendant does not do so. *Sabel v. State*, 248 Ga. 10, 18 (6) (282 SE2d 61) (1981); see also *Weakley v. State*, 259 Ga. 205 (2) (378 SE2d 688) (1989); *Blige v. State*, 205 Ga. App. 133 (6) (421 SE2d 547) (1992), aff'd, 263 Ga. 244 (430 SE2d 761) (1993). Moreover, prior to the first, State-administered polygraph test and after being fully apprised of his rights, defendant signed a stipulation providing: "Should the results of said examination be adverse to the defendant, he may submit himself to an examiner of his choice . . . and said examination will also be admissible as opinion evidence. . . ." Thus, to the extent the expert's testimony involved potentially privileged communications, defendant waived the privilege by signing the stipulation.

4. Defendant's argument that the trial court should have included in its charge on polygraph tests an instruction that such tests are unreliable also is without merit. The charge given by the trial judge was a correct statement of the law under *State v. Chambers*, 240 Ga. 76, 80 (239 SE2d 324) (1977). For defendant's benefit, the trial court added a statement that such tests are generally not admissible in absence of a stipulation. Defendant was then able to explain in closing argument that polygraph tests are not generally admissible without stipulation because they are considered unreliable, but an instruction to that effect would have been an improper comment on the evidence by the trial judge.

5. Lastly, defendant challenges two of the trial court's evidentiary rulings, which defendant says limited his right to thoroughly confront his accusers. Evidentiary matters, including the scope of cross-examination, lie largely within the discretion of the trial court. See *Scott v. State*, 190 Ga. App. 359 (2) (378 SE2d 738) (1989).

At the end of defendant's cross-examination of M. S., defense counsel asked M. S. a compound question designed to emphasize inconsistencies in his statements. The trial court properly sustained an objection to this question and gave defense counsel the opportunity to rephrase it, but defense counsel chose not to do so. In any case, defendant was able to repeatedly point out and emphasize the inconsistencies in the stories of both victims. See *Scott*, 190 Ga. App. at 360 (where subject matter has been successfully explored, trial court does not unduly limit cross-examination by refusing to allow it to be explored further).

During defendant's direct testimony, defense counsel sought to elicit information regarding how J. W.'s parents (defendant's sister and her husband) disciplined J. W. When the State objected on relevancy grounds, defense counsel stated that it could be inferred from their disciplinary practices that J. W. might have changed his story

about defendant's involvement to please his parents. Defense counsel acknowledged, however, that there was no evidence that J. W.'s parents had put any pressure on him in relation to this case. Thus, any possible relevance was purely speculative, and the trial court did not abuse its discretion in sustaining the State's objection.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 21, 1993.

*Charles E. Day*, for appellant.
*Alan A. Cook, District Attorney, W. Kendall Wynne, Jr., Assistant District Attorney*, for appellee.