A11A2105. MAULDIN v. THE STATE.
(721 SE2d 182)

ELLINGTON, Judge.

A Bartow County jury found Danny Mauldin guilty beyond a reasonable doubt of five counts of child molestation, OCGA § 16-6-4. On appeal from the denial of his motion for new trial, Mauldin contends that the trial court erred in admitting similar transaction

---

and other evidence, in excluding certain evidence, in denying his motions for a mistrial, and in instructing the jury. He also asserts that he received ineffective assistance of counsel at trial and that the evidence was insufficient to support his convictions. For the reasons explained below, we affirm.

Viewed in favor of the jury's verdict,[1] the record shows the following facts. In 2001, 53-year-old Danny Mauldin was the choir director at the 14-year-old victim's church. The victim often ate dinner and spent the night with Mauldin and his wife at their home, and they attended church together. In the spring or early summer of 2001, however, the Mauldins separated, and Mrs. Mauldin moved out of their home. That summer, Mauldin decided to move, also, and he repeatedly asked the victim, and sometimes her 13-year-old sister, to come to his house so they could help him pack up his belongings. On several occasions, the victim spent the night alone with Mauldin at his house. According to the victim, at some point that summer, Mauldin kissed her on the mouth. Over the next few weeks, Mauldin progressed from kissing her to fondling her breasts and genitals, exposing himself, placing her hand on his penis, and, eventually, having sexual intercourse with her. Mauldin told the victim that he loved her, that their conduct was okay because she would be 18 years old soon, and that she should not tell anyone else because it was none of their business. These encounters usually happened while the victim and Mauldin were alone at his house, but both the victim and her sister testified that, on one occasion, the sister walked into Mauldin's bedroom and saw him and the victim lying close together in bed under a blanket. Although Mauldin never molested the victim's sister, he asked her one time, while they were alone at his house, to "sleep" with him. After the sister refused, Mauldin made no further advances toward her.

In August 2001, Mauldin started dating a woman that he met at church. Shortly thereafter, he stopped inviting the victim and her sister to his home, and the molestation of the victim stopped. Over the next two months, the victim told her aunt and her church's pastor about the molestation. Her aunt told the victim's mother, who talked to the victim and then reported the molestation to the Department of Family and Children Services ("DFCS"); DFCS notified the police.

The victim underwent a sexual assault exam in October 2001; the results revealed no evidence of assault, which the examining physician testified was not unusual given the time that had elapsed since the alleged molestation and the victim's description of the acts

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

of molestation. A police detective and a DFCS employee interviewed the victim on October 11, 2001, and the audiotape of the interview was played for the jury at trial without objection. The detective also interviewed the victim's mother and sister, her pastor, and, eventually, in January 2002, Mauldin. During his interview, which was recorded and played for the jury at trial, Mauldin denied any inappropriate contact with the victim, but asserted that, if there had been any such contact, it had been initiated by the victim, whom he described as a "habitual liar" with mental and emotional problems. Mauldin was subsequently arrested and charged with five counts of child molestation.[2]

At trial, in addition to the above evidence, the State showed that, during the summer of 2001, Mauldin purchased a dress and a pair of shoes for the victim. The State also showed that, at some point after the molestation stopped, the victim wrote a letter to Mauldin professing her love for him; although she never mailed the letter, her mother found the letter in her bedroom. Mauldin's defense was based upon his claim that the victim was a habitual liar with serious mental and emotional problems who had given so many inconsistent statements about what she claims had occurred that she should not be believed.

1. Mauldin contends that the evidence presented was insufficient to support his convictions, arguing that there were "glaring inconsistencies" between the victim's statements at the time she reported the molestation in 2001, when she was a 14-year-old girl, and her testimony at his 2009 trial. According to Mauldin, these inconsistencies, combined with the victim's "convenient memory loss" concerning certain facts, require a finding that no reasonable jury could have found the victim's testimony to be credible. Thus, because she was not credible and the State presented no physical evidence to support her allegations, his convictions must be reversed due to insufficient evidence.

> When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citation and punctuation omitted.) *Knight v. State*, 311 Ga. App.

---

[2] Specifically, Mauldin was charged with touching the victim's breasts and vagina with his hands, exposing his penis to the victim, causing the victim to touch his penis with her hands, and having sexual intercourse with the victim.

367, 367 (1) (715 SE2d 771) (2011). It is axiomatic that

> it is the function of the jury, not this Court, to judge the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. In so doing, a jury is authorized to believe or disbelieve all or any part of the testimony of witnesses. Ultimately, as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) Id. Moreover, "the victim's testimony alone is generally sufficient to establish the elements of child molestation." (Citation omitted.) Id. See also OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

In this case, the acts of molestation took place when Mauldin was alone with the victim, so there were no eyewitnesses who could provide direct testimony about what occurred. Even if uncorroborated, however, the victim's testimony was sufficient to support Mauldin's convictions on each count as indicted. Further, as noted above, the victim's sister testified that, during one visit to Mauldin's home, she saw the victim and Mauldin lying close together under the covers on his bed; that testimony corroborates the victim's testimony about the same incident.

Consequently, because the victim's testimony was legally sufficient to support Mauldin's convictions, and because the jury, alone, was authorized to judge the credibility of the victim's testimony, Mauldin's challenge to the sufficiency of the evidence must fail.

2. Mauldin argues that he received ineffective assistance of his trial counsel due to counsel's failure to object to (a) a witness' reference to his (Mauldin's) failing polygraph examination results during a *Jackson-Denno*[3] hearing, and (b) inadmissible and prejudicial statements in the victim's interview.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption

---

[3] *Jackson v. Denno*, 378 U. S. 368, 380 (84 SC 1774, 12 LE2d 908) (1964).

that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

(a) The record shows that the court conducted a *Jackson-Denno* hearing to determine the admissibility of Mauldin's January 2002 non-custodial interview statements to the detective investigating the victim's allegations. During the hearing, the detective testified that, after she had interviewed the victim and other witnesses, she called Mauldin and asked him to come in for an interview. The detective's hearing testimony and the interview transcript both show that, during the interview, the detective specifically told Mauldin that she was investigating the molestation allegations, that he was not under arrest, and that he could leave at any time if he no longer wished to answer questions. The record also shows that Mauldin voluntarily sat for the interview and that he not only answered the questions he was asked, but also volunteered much additional information in a rambling narrative, which included his frequent references to the victim as a "good little girl" who was also a "habitual liar" with a "real bad problem."

During the *Jackson-Denno* hearing, the detective testified that she did not seek an arrest warrant for Mauldin until seven months after his non-custodial interview, when she had reviewed all of the information she had gathered about the case. On re-direct, she testified that, after she interviewed Mauldin in January 2002, she referred him to another police department so that he could be questioned about the victim's allegations as part of a polygraph examination. The detective added that the results of the examination showed signs of deception. According to the detective, while the polygraph results were a "tool" she considered during her investigation, she ultimately based her decision to secure an arrest warrant for Mauldin on the totality of the information she had obtained, including statements Mauldin made during his interview that corroborated the statements of the victim and other witnesses.

Following the *Jackson-Denno* hearing, the trial court found that Mauldin's interview was not an in-custody interrogation but was part of an on-going investigation of the victim's allegations. As a result, the court found that the interview was admissible, subject to the redaction of certain statements, including the information about the polygraph examination results. Further, during the motion for new trial hearing, the trial court specifically stated that the detec-

tive's statements about the polygraph examination "had absolutely no impact" on its decision about the voluntariness and admissibility of Mauldin's non-custodial interview statements.

Moreover, given that the polygraph examination was conducted *after* Mauldin gave the interview statements that were at issue in the *Jackson-Denno* hearing, Mauldin has failed to show how the examination or its results could have impacted the voluntariness of his interview statements. Accordingly, under the totality of the circumstances presented, including the fact that information about the polygraph examination results was never presented to the jury, we agree with the trial court's conclusion that Mauldin's non-custodial interview statements were voluntary and admissible[4] and that trial counsel's failure to object to the detective's statements during the *Jackson-Denno* hearing did not constitute ineffective assistance of counsel.

(b) Mauldin asserts that his trial counsel was ineffective for failing to object to allegedly inadmissible and prejudicial statements in the victim's interview with investigators when a tape of the interview was played for the jury. Pretermitting whether the statements were objectionable or whether Mauldin is able to meet his burden of showing that counsel's failure to object to the statements prejudiced his defense, given that there is no transcript of the interview in the record on appeal, the transcript of the motion for new trial shows that counsel's failure to object was the result of an intentional strategic decision. Specifically, counsel testified that it was his trial strategy not to object to the statements because they showed that some of the victim's allegations against Mauldin were "outlandish" and that she was "off" when making her allegations.

"As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). Further, "[w]hether an attorney's trial tactics are reasonable is a question of law, not fact." *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2003). Under the circumstances, the record supports a finding that trial counsel's failure to object to the allegedly prejudicial statements was a matter of reasonable trial strategy. Therefore, Mauldin cannot prevail on this ineffective assistance claim.

---

[4] See *Vergara v. State*, 283 Ga. 175, 176-177 (657 SE2d 863) (2008) ("The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. The issue presents a mixed question of fact and law. On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.") (citations and punctuation omitted).

3. According to Mauldin, the trial court erred in failing to grant his motion for a mistrial when (a) the State elicited testimony regarding his alleged threats against his ex-wife, and (b) the State failed to provide a prior inconsistent statement of the victim before trial. "Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." (Citation and punctuation omitted.) *Childs v. State*, 287 Ga. 488, 492 (696 SE2d 670) (2010).

(a) While the State was cross-examining Mauldin's current wife, the prosecutor asked her if she was aware that Mauldin had threatened to kill his former wife. Before the witness could answer, however, Mauldin's counsel objected and moved for a mistrial. The trial court denied the motion, but decided, sua sponte, to give the jury a curative instruction. Mauldin's counsel did not object to the curative instruction or renew the motion for a mistrial after the curative instruction. Thus, Mauldin waived any error for purposes of appeal by failing to renew his motion for mistrial after the curative instruction was given. *Rhines v. State*, 288 Ga. App. 128, 131 (2) (653 SE2d 500) (2007).

(b) According to Mauldin, the trial court erred in denying his motion for mistrial because the State failed to provide a prior inconsistent statement of the victim before trial. The record shows that, just before trial, the victim told the prosecutor that she and Mauldin had had sexual intercourse in his car during the summer of 2001. Mauldin contends that this allegation was inconsistent with the victim's statements to the police and others, as well as her trial testimony, that she and Mauldin had only had sexual intercourse one time.

The trial transcript shows, however, that the State questioned the victim about the second incident of sexual intercourse during direct, and defense counsel did not object at that time. Further, defense counsel did not raise an objection before beginning his cross-examination of the victim. During cross-examination, defense counsel repeatedly questioned the victim about the inconsistencies in her testimony, as well as those in her statements to her mother, the police, the DFCS employee, the physician, etc. Then, after defense counsel had cross-examined the victim about the sexual intercourse incident in Mauldin's car, counsel moved for a mistrial based upon the State's failure to provide the victim's statement before trial. According to defense counsel, if he had had the information at that time, he "probably" would have mentioned it during his opening statement to further enforce Mauldin's defense that the victim was a habitual liar whom the jury should not believe. After

hearing argument, the court denied Mauldin's motion for mistrial, and defense counsel continued his cross-examination of the victim.

Based on these circumstances, we conclude that Mauldin has waived this alleged error due to trial counsel's failure to make a contemporaneous objection and to seek a mistrial at the time the State first elicited the victim's testimony about the second incident of sexual intercourse. *Boyd v. State*, 275 Ga. 237, 238 (3) (564 SE2d 185) (2002); *Butler v. State*, 273 Ga. 380, 382-383 (5) (541 SE2d 653) (2001). Even if that were not the case, Mauldin is unable to show that his defense was harmed[5] simply by arguing that his counsel's opening statement may have been different if counsel had known about the victim's statement before trial, because counsel's opening statement was not transcribed. Accordingly, this alleged error presents nothing for this Court to review.

4. Mauldin contends that the trial court erred in instructing the jury on resolving conflicts in the evidence. The record shows that the court instructed the jury as follows:

> Upon consideration of the evidence in this case, if you find that there is a conflict in the testimony of the witnesses or a conflict between a witness or witnesses, it is your duty to settle this conflict if you can without believing that any witness has made a false statement. If you cannot do this, then it becomes your duty to believe that witness or those witnesses which you think are best entitled to belief. It is for you alone to determine what testimony you will believe and what testimony you will not believe.

Mauldin's counsel did not object to the instruction. Therefore, Mauldin has waived his right to urge error on appeal. OCGA § 17-8-58 (a), (b); *Collier v. State*, 288 Ga. 756, 758-759 (4) (707 SE2d 102) (2011).

Moreover, even if the "plain error" standard of review applied in this case,[6] we find that the instruction given by the trial court included substantially the same language as the pattern jury instruction on conflicts in the testimony[7] and that it was a complete and

---

[5] See *Jones v. State*, 276 Ga. App. 728, 729 (624 SE2d 275) (2005) ("[T]he failure to grant a mistrial based on a discovery violation committed by the State constitutes reversible error only if the violation harmed the defendant's ability to prepare and present his defense or otherwise deprived him of a fair trial.) (citations omitted).

[6] See OCGA § 17-8-58 (b); *Crusselle v. State*, 303 Ga. App. 879, 882 (2) (694 SE2d 707) (2010) ("In reviewing an allegedly erroneous jury instruction, this Court applies the plain legal error standard of review.") (punctuation and footnote omitted).

[7] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 1.31.20 ("When you consider the evidence in this case, if you find a conflict, you should settle this

correct statement of the law. *Brown v. State*, 264 Ga. 48, 50 (3) (c) (441 SE2d 235) (1994); *Byrd v. State*, 186 Ga. App. 446, 450 (4) (b) (367 SE2d 300) (1988). Accordingly, we find no reversible error. See *Collier v. State*, 288 Ga. at 758-759 (4).

5. Mauldin argues that the trial court erred in excluding evidence that the victim had made a prior false accusation against her grandfather. Evidence that the victim had made prior false accusations of sexual misconduct against a third party is admissible to attack the credibility of the victim and as substantive evidence tending to prove that the instant offense did not occur. *Menard v. State*, 281 Ga. App. 698, 700 (3) (637 SE2d 105) (2006). Before admitting evidence of the victim's prior accusation, however,

> the trial court must conduct a hearing, outside the presence of the jury, to determine whether a reasonable probability exists that the victim made a prior false accusation of sexual misconduct. "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." The defendant bears the burden of coming forward with evidence [that the prior accusation was false] at the hearing. The trial court's ruling will not be overturned absent an abuse of discretion.

(Citation, punctuation and footnotes omitted.) *Palmer v. State*, 248 Ga. App. 515, 515 (1) (546 SE2d 886) (2001). This Court has consistently held that a defendant will not meet his or her burden of proving that the victim's prior accusation was false merely by showing that the accused third party has denied the victim's allegations, when that denial is not supported by other evidence, or by showing that the third party was never prosecuted for the alleged sexual misconduct. *Menard v. State*, 281 Ga. App. at 701 (3).

In this case, the transcript of the hearing on the State's motion in limine to exclude evidence of this alleged prior false accusation shows that it was during his non-custodial statement to the police that Mauldin first asserted that the victim had told him that her grandfather had molested her. There is nothing in the record to show that the victim ever made the allegation to anyone else; thus, there was never an investigation into such allegation. Given these circumstances, the trial court granted the State's motion in limine and excluded the allegedly false prior accusation.

---

conflict, if you can, without believing that any witness made a false statement. If you cannot do so, then you should believe that witness or those witnesses whom you think are best entitled to belief. You must determine what testimony you will believe and what testimony you will not believe.").

We conclude that Mauldin has failed to meet his burden on appeal of showing that, even if the victim had made a prior accusation of sexual misconduct against her grandfather, there is a reasonable probability that the prior accusation was false. *Palmer v. State*, 248 Ga. App. at 516 (1). Therefore, the trial court did not abuse its discretion in excluding the evidence. Id.

6. Mauldin contends that the trial court abused its discretion in admitting, as similar transaction evidence, the incident in which he allegedly asked the victim's sister to "sleep" with him. He argues that the evidence was unreliable and failed to prove that he committed the alleged act, there was no proof that he made the request for "sexual purposes," and the evidence's prejudicial effect outweighed its probative value.

> In general, evidence of independent offenses committed by a defendant is irrelevant and inadmissible in a trial for a different crime. In some cases, however, evidence of similar crimes (or transactions) is admissible where its relevance to show identity, motive, plan, scheme, bent of mind and course of conduct, outweighs its prejudicial impact. Before evidence of prior crimes is admissible, the trial court must determine that the State has affirmatively shown that: (1) the State seeks to admit evidence of the independent offenses or acts for an appropriate purpose; (2) there is sufficient evidence that the accused committed the independent offenses or acts; and (3) there is sufficient connection or similarity between the independent offenses or acts and the crimes charged so that proof of the former tends to prove the latter.

(Citations and punctuation omitted.) *Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009). Further,

> when considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question. This rule is most liberally extended in cases involving sexual offenses because such evidence tends to establish that a defendant has such bent of mind as to initiate or continue a sexual encounter without a person's consent.

(Citations and punctuation omitted.) Id. at 121.

> When reviewing the trial court's factual findings regarding whether the State satisfied the three-prong test, we apply

the clearly erroneous standard. Further, the decision to admit similar transaction evidence which satisfies the three-prong test is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.

(Citations omitted.) *Flowers v. State*, 269 Ga. App. 443, 444 (1) (604 SE2d 285) (2004).

In this case, the State timely filed a notice of intent to present a similar transaction involving Mauldin and the victim's sister, who was 13 years old at the time — just one year younger than the victim.[8] During the similar transaction hearing, the State presented the testimony of the victim's sister to show that, at some point during the summer of 2001 — the very same period during which Mauldin's molestation of the victim occurred — Mauldin and the sister were alone in his house when Mauldin asked the sister to come over to him and to "sleep" with him on the couch. After the sister refused, Mauldin made no other advances toward her.

After hearing argument, the trial court ruled that this evidence was sufficiently similar to the charged crimes because the incident involved the victim's sister and occurred during the same time period and under similar circumstances, and because the jury could find that Mauldin's actions demonstrated his intention to have physical contact of a sexual nature with the sister. The court also found that the evidence was relevant to demonstrate Mauldin's bent of mind and his scheme to commit similar crimes against both the victim and her sister. Defense counsel objected to the ruling and requested that the court give a similar transaction limiting instruction, which the court gave at the beginning of the trial. After the State presented the sister's testimony about the similar transaction, defense counsel thoroughly cross-examined her.

Thus, there was sufficient evidence to show that the incident at issue occurred at the same location and within the same three-month time period as the charged crimes; involved the victim's sister, who was only one year younger than the victim and who was at the defendant's home under circumstances that were similar to those present when the charged crimes occurred; and involved an act and/or a statement that the jury could reasonably conclude exhibited an intention to commit a crime against the sister that was similar to those committed against the victim. Because the rule allowing the admission of similar transaction evidence is liberally extended in cases involving sexual offenses, we conclude that the trial court did not abuse its discretion in admitting this evidence at trial. *Pareja v.*

---

[8] Although the notice of intent also referred to three other incidents, none of those were presented to the jury and, thus, are not at issue here.

*State*, 286 Ga. at 121.

   *Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED DECEMBER 7, 2011.

   *Elizabeth A. Brandenburg, Marcia G. Shein*, for appellant.
   *T. Joseph Campbell, District Attorney, Suzanne Z. Brookshire, Stewart D. Bratcher, Assistant District Attorneys*, for appellee.