**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**April 20, 2017**

# In the Court of Appeals of Georgia

A17A0790. BILL v. THE STATE.

ANDREWS, Judge.

Following a jury trial, Jason Anthony Bill was convicted of kidnapping, aggravated assault, aggravated sodomy, aggravated sexual battery, rape, and false imprisonment. Bill appeals, challenging several evidentiary rulings, the denial of his motion for mistrial, and the trial court's jury instructions. Finding no error, we affirm.

Viewed favorably to the jury's verdict, see *Moorer v. State*, 290 Ga. App. 216 (659 SE2d 422) (2008), the evidence shows that the victim, who was originally from El Salvador and speaks no English, lived at the same Cobb County apartment complex as Bill and worked at a nearby bar. Bill, a Cobb County Sheriff's deputy, occasionally visited the bar.

On the evening of July 14, 2008, Bill entered the bar while the victim was working. He appeared angry and drunk, and the bar's owner asked him to leave. Bill left, but returned a short time later with a gun. He called the victim over, displayed his badge, and grabbed her arm. Bill then placed her in his truck and locked the doors.

At that point, the victim believed she was under arrest. Instead of taking her to jail, however, Bill drove to his apartment, where he handcuffed the victim and told her to "suck" his penis. When the victim refused, Bill pulled out his gun, and she complied. He then beat the victim with his hands and a belt, tore off her clothing, and tried to choke her with her brassiere. Bill also raped her and placed his finger in her anus. To prevent escape, Bill bound the victim's hands to her feet with a rope and gagged her by stuffing a shirt in her mouth. Eventually, however, she managed to untie the rope and ran from Bill's apartment, knocking on neighboring apartment doors for help.

An 11-year-old girl testified that she was watching television at her grandmother's apartment just before midnight on July 14, 2008, when she heard a knock at the door. She opened the door and found the victim, who was naked, handcuffed, and appeared to have been beaten. The girl's grandmother gave the victim a robe, and the police were called. Although the family could not understand

the victim, who was speaking in Spanish, she pointed at a man on a motorcycle that was slowly circling the complex. When the police arrived, the grandmother's boyfriend told the officers where the motorcycle had gone. The police found Bill next to the motorcycle and placed him under arrest. The victim subsequently identified Bill as her attacker.

Bill testified at trial, denying that he assaulted the victim. He asserted that he had previously paid the victim for sex and that although they had planned another sex-for-money encounter for July 14, 2008, they only kissed that night. The jury, however, found him guilty of kidnapping, aggravated assault, aggravated sodomy, aggravated sexual battery, rape, and false imprisonment.

1. In several claims of error, Bill argues that the trial court improperly excluded evidence that the victim had engaged in prostitution. Specifically, he sought to introduce testimony that (a) after the assault, someone had written "hooker" on her apartment door, and (b) a previous roommate had kicked her out of her residence because she was a prostitute and brought too many men to the home.

(a) Pursuant to former OCGA § 24-2-3 (a), the rape shield statute applicable at the time of trial,[1] evidence relating to a victim's past sexual behavior generally is not admissible in a rape trial, either as direct evidence or on cross-examination of the victim or other witnesses. Past sexual behavior, however, may be admitted when the trial court finds that such behavior "directly involved the participation of the accused and . . . that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution." Former OCGA § 24-2-3 (b).

Bill does not argue that evidence of the victim's prostitution demonstrates consent; in fact, he testified that no sexual relations occurred on July 14, 2008. Instead, he claims that the prostitution evidence was relevant to show that someone else could have been angry at the victim and caused her injuries. According to Bill, "any one of the men who came into contact with [the victim through her prostitution] could have been responsible for her physical and/or psychological injuries."

But even if such evidence *might* be admissible under certain circumstances, despite the limitations of the rape shield statute, the trial court found it irrelevant,

_____

[1] Bill was tried in February 2011, before Georgia's new Evidence Code took effect in 2013. The current rape shield statute is codified at OCGA § 24-4-412.

4

speculative, and highly prejudicial here. We agree. Bill has pointed to nothing – other than rank speculation – linking the July 14, 2008 sexual assault to the victim's prior prostitution with other men. There was no evidence that she was previously threatened or physically injured by any of these individuals. Simply put, Bill has drawn no nexus between her history of prostitution and the assault in this case. The trial court, therefore, properly excluded the evidence. See *Moorer*, supra at 219 (4) (evidence of victim's prior prostitution not relevant to aggravated assault charge where defendant "failed to show any nexus whatsoever between the alleged prostitution and the conclusion that someone else could have inflicted the victim's injuries"); *Stargel v. State*, 210 Ga. App. 619, 622 (5) (436 SE2d 786) (1993) (trial court properly excluded evidence where only "possible relevance was purely speculative").

Moreover, even if some nexus had been shown, exclusion of this evidence was harmless. Although the trial court refused to admit certain prostitution-related testimony, it allowed Bill to assert that he had previously paid the victim for sex. Evidence of her prostitution, therefore, was before the jury, and further testimony regarding this behavior would have been cumulative. Accordingly, its exclusion provides no basis for reversal. See *Brooks v. State*, 313 Ga. App. 789, 794 (2) (b)

5

(723 SE2d 29) (2012) (defendant not harmed by exclusion of evidence that was cumulative of defendant's trial testimony).

(b) Bill claims that the trial court erred in preventing him from impeaching the victim with the prostitution-related evidence. According to Bill, the victim opened the door to cross-examination "concerning [her] prior acts of prostitution" when she denied having sex with him before July 14, 2008. It is true that evidence of prior sexual behavior may be admissible to impeach a victim's contradictory trial testimony. See *Tidwell v. State*, 306 Ga. App. 307, 311 (5) (701 SE2d 920) (2010). The "impeachment" evidence cited by Bill, however, does not relate to *his* prior contact with the victim. It involved general allegations that she had engaged in prostitution. Bill has not cited us to any place in the record where the victim denied being a prostitute; she simply stated that she had not had sexual relations with him. The general prostitution evidence, therefore, did not contradict or impeach the victim's testimony, and Bill was not entitled to cross-examine her on it. See id.; see also former OCGA § 24-9-82 ("A witness may be impeached by disproving the facts testified to by him.").

(c) Finally, Bill argues that portions of the prostitution-related evidence did not directly involve sexual behavior and thus fell outside of the rape shield statute. As

6

discussed above, however, the trial court properly concluded that the evidence was speculative, irrelevant, and subject to exclusion. Although Bill claims that this ruling unduly restricted his cross-examination of the State's witnesses, a trial court "retain[s] broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion, repetition, or irrelevant evidence." *Sanders v. State*, 290 Ga. 445, 446 (2) (721 SE2d 834) (2012).

2. Bill contends that the trial court erred in excluding evidence that the victim had previously filed a "false" sexual assault report on behalf of a roommate, who was allegedly raped by her boyfriend. Before trial, the State moved in limine to exclude evidence of this report. Arguing that the rape report was "false" because the boyfriend was only convicted of battery, Bill asserted that the report was admissible to show that the victim had a history of fabricating sexual assault allegations. He further argued that she was motivated to file false reports because: (a) she was trying to secure a special visa available for crime victims; and (b) she wanted to obtain money by suing the apartment complex and Cobb County for failing to protect her.

The trial court concluded that Bill had not demonstrated a reasonable probability of falsity with respect to the prior report involving the victim's roommate, rendering it inadmissible. See *Clements v. State*, 279 Ga. App. 773, 774 (2) (632

7

SE2d 702) (2006) ("Before evidence of previous false allegations of sexual abuse can be admitted, the trial court must determine outside the jury's presence that a reasonable probability of falsity exists."). After further discussion, however, Bill's counsel made the following proposition:

> What about this? What if we just don't even – what if we don't even tender [the report] as a prior false claim? Merely, that it is what it is. And the claims were made, and the results were what they were. Because, really, the core reason that we offer it is, as I said, to show – it's part of her motive to fabricate. It's part of this lawsuit that is coming into this trial, and it's directly related to that. I certainly am not going to tell the jury that it was false, because I wasn't there. I don't know.

The trial court stated that it would allow the report to "be[] tendered in that fashion." The record further shows that evidence regarding the prior sexual assault report, the victim's civil lawsuit against various defendants, and her efforts to obtain a special visa was introduced at trial, forming the basis for a key defense argument – that the victim fabricated the assault allegations against Bill. Despite Bill's claim to the contrary, therefore, the trial court admitted evidence of the prior report. And to the extent the defense was limited in labeling the prior report as "false," that limitation was suggested and agreed to by defense counsel. This claim of error, therefore, provides no basis for reversal. See *Gorman v. State*, 318 Ga. App. 535, 540

8

(4) (734 SE2d 263) (2012) ("One cannot complain of a result he procured or aided in causing, and induced error is not an appropriate basis for claiming prejudice.") (punctuation omitted).

3. Next, Bill argues that the State improperly called the victim as a rebuttal witness to bolster her prior testimony. After the defense rested its case, the prosecution briefly re-called the victim to ask her whether she had: (a) engaged in sexual relations with Bill before July 14, 2008; (b) visited his apartment prior to July 14, 2008; (c) voluntarily entered his apartment on July 14, 2008; and (d) agreed to have sex with him for money on that date. To each question, the victim replied, "no." According to Bill, this testimony did not constitute rebuttal because it "was not offered to refute or explain any of the Defendant's evidence."

"A trial court's rulings concerning the scope of rebuttal testimony are subject to review only for an abuse of discretion." *Galvan v. State*, 330 Ga. App. 589, 594 (2) (768 SE2d 773) (2015). In this case, the trial court concluded that the State re-called the victim to rebut evidence presented by the defense, including testimony from Bill that he had previously had sex with the victim and that she willingly came to his apartment on July 14, 2008, to engage in sex for money. We find no error. A trial court may "allow relevant evidence during rebuttal even if such evidence tends to

bolster the State's case more than to directly impeach defense evidence." Id. (punctuation omitted). The trial court did not abuse its discretion in permitting the victim's rebuttal testimony. See id.

4. Evidence at trial showed that Bill, an Iraq War veteran, had a drinking problem. To help explain his alcohol use, Bill sought to introduce testimony that his best friend had been killed in Iraq. The trial court excluded the evidence, and Bill challenges this ruling on appeal, asserting that the trial court erred in limiting relevant testimony.

We disagree. Evidence regarding the death of Bill's friend shed no light on the July 14, 2008 assault or the fact that Bill had an alcohol problem and was drinking that night. The trial court did not abuse its discretion in finding such evidence irrelevant. See *Chambers v. State*, 308 Ga. App. 748, 751 (1) (708 SE2d 651) (2011) (applying abuse of discretion standard); former OCGA § 24-2-1 ("Evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded."). Moreover, Bill testified that he served two tours of duty in Iraq and began drinking more heavily when he returned from his second tour, raising a link between his military service and his alcohol use. Given this evidence, we find it highly probable that the trial court's decision to

exclude additional testimony regarding Bill's war experience did not contribute to the verdict. Even if the trial court erred in excluding the testimony, therefore, the error was harmless. See *McWilliams v. State*, 280 Ga. 724, 727 (4) (632 SE2d 127) (2006).

5. The trial court permitted the State, over objection, to cross-examine Bill about his failure to offer evidence corroborating his claim that he had communicated with the victim via cell phone prior to July 14, 2008. When Bill responded that he had hoped the State would present such evidence, the prosecutor retorted: "I didn't know before today, or before yesterday, that you and [the victim] had some prior relationship." Defense counsel objected and moved for a mistrial, asserting that the prosecutor had improperly testified and commented on Bill's right to remain silent. Although the trial court denied the motion for mistrial, it sustained the objection and gave the following curative instruction to the jury:

> Ladies and gentlemen, I sustained an objection by the Defense, and I'll instruct you that the State should not comment on evidence or on what it knows or does not know from the evidence. And so I'll ask you to disregard the last question that was asked by the State.

Bill now claims that the trial court erred in denying his motion for mistrial. The record shows, however, that he did not object to the curative instruction or renew his motion after the trial court gave it. "It is well settled that where a defendant objects

11

and moves for mistrial and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with that action, he must renew the objection or motion." *Gaines v. State*, 339 Ga. App. 527, 529 (2) (792 SE2d 466) (2016) (punctuation omitted). This claim of error, therefore, has been waived. See id.; *Mauldin v. State*, 313 Ga. App. 228, 234 (3) (a) (721 SE2d 182) (2011).

6. Finally, Bill argues that the trial court improperly commented on the evidence by charging the jury that "[v]aginal or anal trauma and physical injury are not constituent elements of the criminal offense of rape or aggravated sexual battery." The cited charge, however, did not comment on the evidence produced at trial. Rather, it accurately stated that physical harm is not needed to establish rape or aggravated sexual battery. See *Skipper v. State*, 257 Ga. 802, 804 (1) (b) (364 SE2d 835) (1988) ("Other than the penetration of the female sex organ by the male sex organ, the infliction of physical injury is not an element of the offense of rape."); *Lee v. State*, 306 Ga. App. 144, 145 (1) (701 SE2d 582) (2010) (physical injury need not be shown to prove aggravated sexual battery).

"The only requirement regarding jury charges is that the charges, as given, were correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence." *Sims v. State*, 296 Ga. App. 461, 464 (3) (675 SE2d 241)

12

(2009) (punctuation omitted). The court's charge correctly stated the law and was not misleading. Accordingly, the trial court did not err in giving the instruction. See id.; *Corbin v. State*, 305 Ga. App. 768, 771 (2) (700 SE2d 868) (2010).

*Judgment affirmed. Ellington, P. J., and Rickman, J., concur*.