NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CODY WAYNE STORY, *Appellant.*

No. 1 CA-CR 20-0523
FILED 7-27-2021

Appeal from the Superior Court in Mohave County
No. S8015CR201900776
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Rideout Law PLLC, Lake Havasu City
By Bradley H. Rideout, Wendy Marcus
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge David D. Weinzweig joined.

**B R O W N**, Judge:

¶1 Cody Wayne Story appeals his conviction and sentence for transporting dangerous drugs for sale. For the following reasons, we affirm.

## BACKGROUND

¶2 In April 2019, Story was traveling on I-40 in a pickup truck driven by Kristopher William Douglas when they were stopped by law enforcement for a mud flap violation. Douglas eventually consented to a dog sniff. After the dog alerted to the truck, a search revealed a large quantity of methamphetamine. The State charged Story with one count of transportation of dangerous drugs for sale, and the superior court severed his case from Douglas's case.

¶3 Story moved to suppress the drugs, claiming he was detained longer than necessary for officers to complete Douglas's traffic citation. The superior court denied the motion after an evidentiary hearing. In its ruling, the court briefly referenced an evidentiary hearing previously conducted in Douglas's case.

¶4 In May 2020, as Story's case was pending trial, the Arizona Supreme Court issued several orders "in response to the COVID-19 public health threat [to] limit[] and modif[y] court operations to ensure justice in Arizona is administered safely." In addition to granting power to presiding superior court judges to determine "how in-person court proceedings. . . are to be phased-in and conducted," the supreme court also limited the number of peremptory strikes per side from six to two, and it authorized the use of technology to "facilitate alternatives to in-person appearance" for jury selection.

¶5 Three days before trial, Story filed a motion in limine and objection to the use of Zoom or other videoconferencing platforms for jury selection, arguing such use would deny him the right to a fair and impartial

jury. The court denied Story's motion as untimely, adding that the use of videoconferencing did not "impede[] the selection of a fair and impartial jury." Defense counsel orally objected to reducing the number of peremptory strikes, which the court similarly denied. During jury selection, 29 prospective jurors appeared in person and four participated by videoconference. Of those four, three were struck for cause and the fourth by peremptory strike. After a three-day trial, the jury found Story guilty as charged and he timely appealed.

## DISCUSSION

### A. Due Process

**¶6** Story argues two temporary changes made to procedural rules during the COVID-19 pandemic violated his due process rights: (1) a reduction in the number of peremptory strikes and (2) a policy allowing potential jurors to appear via videoconferencing. Because Story's due process claims were not timely raised in the superior court, we review solely for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018); *State v. Smith*, 219 Ariz. 132, 133, ¶ 1 (2008).

**¶7** Story contends his due process rights were violated because he was among a group of criminal defendants subjected to different procedural rules, based solely on the circumstances existing at the time of his trial; however, "[a] defendant has no vested right in any particular mode of procedure." *State v. Mendoza*, 170 Ariz. 184, 193 (1992). Criminal trials are governed by the procedural rules in place at the time of trial. *See State v. Medina*, 232 Ariz. 391, 408, ¶¶ 70–73 (2013); *see also Stargel v. State*, 436 S.E.2d 786, 788 (Ga. Ct. App. 1993) (applying this reasoning to uphold a statute that reduced peremptory strikes from 20 to 12).[1]

**¶8** In addition, Story argues the orders modifying procedures during the pandemic are void because they were not adopted in accordance with Arizona Rule of the Supreme Court 28. That rule provides a mechanism for "[a]ny person [to] petition the Arizona Supreme Court to adopt, amend, or abrogate a court rule," subject to a period of public comment. Ariz. R. Sup. Ct. 28(a)(1), (5). But our supreme court has its own constitutional authority to make procedural rules, including emergency provisions, and that authority is much broader than the power granted to the public to petition for new rules under Rule 28. *See* Ariz. Const. art. VI,

---

[1] Because Story denies he is asserting an equal protection claim, any such claim has been abandoned. *See State v. Carver*, 160 Ariz. 167, 175 (1989).

§ 5(5); *see also Burney v. Lee*, 59 Ariz. 360, 363 (1942); *State v. Pierce*, 59 Ariz. 411, 414 (1942); Ariz. R. Sup. Ct. 26 (permitting our supreme court to suspend rules "for good cause . . . and in furtherance of justice").

### 1. Peremptory Strikes

**¶9**　　　　Story argues the superior court violated his due process rights by reducing his peremptory challenges from six to two. But there is no constitutional right to peremptory strikes. *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988). Peremptory strikes are a benefit conferred 'beyond the minimum requirements of fair [jury] selection,'" and states have discretion to implement them. *Rivera v. Illinois*, 556 U.S. 148, 157–58 (2009) (alteration in original) (citation omitted). Any temporary reduction in the number of peremptory strikes cannot violate Story's due process rights if the state could eliminate the strikes altogether.

**¶10**　　　　Story nonetheless asserts he was prejudiced by the reduction in strikes because he was forced to use his last strike to eliminate a prospective juror who appeared via videoconference, so he could not eliminate another juror whom he found unfavorable. He does not, however, contend these jurors should have been dismissed for cause. So long as no jurors were removable for cause, the jury was considered impartial under constitutional standards. *Rivera*, 556 U.S. at 159.

### 2. Videoconferencing

**¶11**　　　　Story argues his due process rights were violated because prospective jurors were allowed to appear via videoconferencing for jury selection. First, he contends the use of videoconferencing prevented him from being able to evaluate the jurors' body language and demeanor. Though viewing a prospective juror's demeanor in-person is useful, *see Skilling v. United States*, 561 U.S. 358, 386 (2010), criminal defendants are entitled to a "fair trial, not a perfect one," *State v. Dann*, 205 Ariz. 557, 565, ¶ 18 (2003) (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986)). And we are not persuaded that the use of optional videoconferencing during a global pandemic is unconstitutional. *See United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 4917733, at *8 (M.D. Ga. Aug. 21, 2020) ("[U]nder normal circumstances, being able to see a potential juror's full facial expressions may be tactically preferable. But the Court is unconvinced that it is required

by the Constitution."); *see also United States v. James*, CR-19-08019-PCT-DLR, 2020 WL 6081501, at *2–3 (D. Ariz. Oct. 15, 2020).[2]

¶12            Second, Story argues the use of videoconferencing prevented his jury pool from representing a fair cross-section of the community, as required by *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975).  To prevail on that issue, Story must show

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*State v. Cota*, 229 Ariz. 136, 143, ¶ 14 (2012) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

¶13            Story alleges, without supporting evidence from the record, that the use of videoconferencing may have prevented lower-income individuals and those who lack access to technology from appearing for jury service.  The use of videoconferencing, however, was wholly optional, and prospective jurors were permitted to appear in-person, as most of them did.

¶14            Story also notes it was "unusual" for no Native Americans to be included in the jury pool in relation to the demographic makeup of the county.  He did not raise this argument in the superior court, where appropriate fact-finding could have been conducted.  *See State v. Brita*, 158 Ariz. 121, 124 (1988) ("It is particularly inappropriate to consider an issue for the first time on appeal where the issue is a fact-intensive one.").  He does not argue or present evidence that Native Americans were subject to "systematic exclusion" from the jury panel for any reason, and he does not argue this exclusion extends beyond the single jury pool assigned to his case.

---

[2]     Story briefly suggests that masks worn by prospective jurors who were present in-person obstructed his ability to evaluate their body language and demeanor.  Because this suggestion is not supported by the record or developed on appeal, we summarily reject it.

¶15        Story has not established fundamental, prejudicial error relating to any of his due process claims.

### B.        Motion to Suppress

¶16        Story argues the court erred in denying his motion to suppress, asserting the court's references to Douglas's case were prejudicial.  We review the denial of a motion to suppress for an abuse of discretion, viewing the facts in the light most favorable to upholding the court's ruling.  *State v. Cornman*, 237 Ariz. 350, 354, ¶ 10 (App. 2015).  In reviewing the motion, we only consider the evidence presented at the suppression hearing.  *State v. Lietzau*, 248 Ariz. 576, 579, ¶ 8 (2020).

¶17        We are unable to assess this argument because Story has not provided the suppression hearing transcript on appeal.  We presume that "any evidence not available on appeal supports the trial court's actions." *State v. Lavers*, 168 Ariz. 376, 399 (1991).  Though the transcript should have been automatically included in the record under Arizona Rule of Criminal Procedure 31.8(b)(1)(B)(i), an appellant has the ultimate burden of "ensuring the appellate record contains the necessary items for the arguments presented" and supplementing the record where an item has been omitted.  *State v. Olague*, 240 Ariz. 475, 478, ¶ 7 (App. 2016); *see also State v. Zuck*, 134 Ariz. 509, 512–13 (1982) ("It is the duty of counsel who raise objections on appeal to see that the record before us contains the material to which they take exception.").[3]

¶18        Story contends he was prejudiced by the court's references to Douglas's case and the court improperly relied on evidence from that case in denying Story's motion to suppress. The minute entry for the suppression hearing says the court considered a video exhibit from the other case and that "neither counsel object[ed]."  Because Story failed to object, we only review for fundamental, prejudicial error.  *See Escalante*, 245 Ariz. at 140, ¶ 12.  Story shows no prejudice because the court's mention of the Douglas's case in its ruling was inconsequential.  After analyzing the applicable legal standards and the evidence presented at the suppression hearing, and rejecting Story's arguments, the court then noted it would "not evaluate the other factors.  However, for the reasons given in the co-defendant's case, there was reasonable suspicion to detain the defendant and the co-defendant after the traffic stop ended."  That portion of the

---

[3]        In his appendix, Story includes documents from Douglas's motion to suppress.  We decline to consider the documents because they are not "essential to decid[ing] an issue on appeal." Ariz. R. Crim. P. 31.11(b).

court's ruling was merely an alternative finding; even assuming it should not have been mentioned, on this incomplete record Story has not made any showing it was prejudicial.

## CONCLUSION

¶19        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA