615 P.2d 638

**STATE of Arizona, Appellee,**

v.

**Wayne Eric JEFFERSON, Appellant.**

No. 4888.

Supreme Court of Arizona,
In Banc.

June 25, 1980.

Rehearing Denied Sept. 4, 1980.

Robert K. Corbin, Atty. Gen., Phoenix by William J. Schafer, III, David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Martin & Feldhacker by William H. Feldhacker, Phoenix, for appellant.

STRUCKMEYER, Chief Justice.

This is an appeal from an order revoking the appellant's probation and a further order directing that he be incarcerated in the Arizona State Prison for a period of not less than five nor more than six years. Jurisdiction was accepted pursuant to the authority of Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S. Reversed.

On March 12, 1975, appellant was convicted of assault with a deadly weapon. Thereafter, on April 23, 1975, sentence was suspended and appellant was placed on probation for five years. On November 29, 1978, a petition to revoke appellant's probation was filed in the Maricopa County Superior Court. The petition alleged Jefferson had committed aggravated assault with a deadly weapon and had possessed or controlled a firearm without the permission of his probation officer. After a revocation hearing, the court below found that the State had shown by a preponderance of the evidence that appellant had committed the probation violations alleged in the petition to revoke.

At Jefferson's hearing on the violation of his probation, Robert McDonald and Adison White testified that appellant had a hand gun and had fired two shots at McDonald in a shopping center. Jefferson testified that it was McDonald who had a gun and fired twice at him. Jefferson ran from the scene of the shooting but returned later. He was arrested and at that time asked for what is called by his counsel a "powder burn test" to corroborate his story. Jefferson also called a witness who stated that she saw McDonald with a gun, saw him point it and heard a shot fired.

Appellant appeals on the ground that he was deprived of due process of law when police failed to afford him the opportunity to obtain a "powder burn" test. He asserts that the test would have demonstrated his innocence of the offense charged, and he argues that he had a constitutional right to be given a "powder burn test." His contention is that the failure of the police to make the test and make the evidence available to him amounted to suppression of exculpatory evidence and denied him a fair hearing in violation of the Fourteenth Amendment to the Constitution of the United States.

█ Appellant argues from the decision in *Smith v. Cada,* 114 Ariz. 510, 562 P.2d 390 (App.1977), that an accused has the right to have independent tests and that the interference with the right to obtain evidence, lost through the passage of time, is analogous to the suppression of evidence and violative of due process. Appellant, however, misapplies the holding in *Cada.* There, Cada was arrested at about 12:40 a. m. on the charge of driving a motor vehicle while under the influence of liquor. Even though he had on his person cash funds which exceeded the bail schedule of the Phoenix Municipal Court for the offense charged, his request for bail to secure his release so that an independent blood test could be administered was ignored. *Cada* is authority for the proposition that it is a denial of due process to deprive one of the right to obtain at his own expense a scientific test for the purpose of establishing his innocence.

We note that in *Cada* the Court of Appeals quoted this language from *In re Martin,* 58 Cal.2d 509, 24 Cal.Rptr. 833, 374 P.2d 801 (1962):

"* * * [P]olice officers are not required to take the initiative or even to assist in procuring any evidence on behalf of a defendant which is deemed necessary to his defense." *Smith v. Cada,* supra at 512, 562 P.2d at 392.

█ We do not base our conclusion on the proposition that police officers do not have any responsibility to assist an accused in exculpation when he is in custody, for

there may be circumstances where there is a duty to assist a suspect in exculpation. Rather, we decide the issue on our conclusions in *State ex rel. Hyder v. Hughes,* 119 Ariz. 261, 580 P.2d 722 (1978), that where there is a loss or destruction of evidence, we will reverse a defendant's conviction if it can be shown (1) bad faith or connivance on the part of the government or (2) that he was prejudiced by the loss of the evidence.

■ Officer Robert Lewis of the Phoenix police force testified at the revocation hearing:

"Q. Did Mr. Jefferson ask you if you would give him a powder burn test?

A. Yes, he did.

Q. Did you do that?

A. I could not, sir.

Q. How is that normally done, if you know?

A. We take them down to the I. Bureau where they could have that done. It was late at night and they could not do that at that time.

Q. Are they only in operation during regular business hours? Is that the problem?

A. No, sir. Everyone was out of the office.

Q. Does it have to be done within a certain amount of time? In other words, does it have to be done within a specific time after a shooting of a weapon?

A. Yes. I believe so, sir, yes.

Q. Do you know how long that time is?

A. No, sir, I do not."

If we assume that fair dealing compelled the State to give appellant a powder burn test simply at his request, a point we specifically do not decide, still the evidence is uncontradicted that the State could not. More important, however, is the fact that there is no evidence in this record of the nature of a powder burn test, what it could have disclosed, when it should have been taken, and the circumstances which would make it reliable. We do not find bad faith or connivance on the part of the police, nor are we able to say that appellant was prejudiced by the claimed loss of evidence.

■ The appellant urges that this case must be reversed because of an attempt by defense counsel to withdraw during the course of the revocation hearing. The hearing on the revocation was commenced on January 2, 1979. Two witnesses were called by the prosecution. One was the appellant's probation officer who testified to the terms of appellant's probation, and the second a police officer who testified to an incident at which a gun was discharged. At the request of defendant, the hearing was continued until January 5, 1979. At that time, the following occurred:

"[DEFENSE COUNSEL]: Could I have the defendant down here with me, Your Honor?

THE COURT: You may approach the bench with the defendant.

[DEFENSE COUNSEL]: I am Norris Lavoni appearing for William Piatt, court appointed on this case. Your Honor, there has been a conflict develop between the defendant and I. It is a conflict that I will avow to the Court is genuine and I would like in the alternative to request the Court that I withdraw as counsel for the defendant because of this conflict.

THE COURT: How can I rule on a conflict if I don't know what it is?

[DEFENSE COUNSEL]: The conflict involves the nature of representation of the defendant.

THE COURT: The Court is asking you to do something that you feel is unethical?

[DEFENSE COUNSEL]: Well, I will say this much to the Court: The defendant insists on testifying in our part of his probation revocation hearing. I feel that he cannot.

THE COURT: The Court appreciates counsel's concern in this matter. What you are saying to the the Court is that [this] is a tactical decision and you have advised your client to the best of your knowledge, and if he sees fit to proceed contrary to your advice, he does so at his peril.

[DEFENSE COUNSEL]: The underpinnings of my advice, Your Honor, are based on the attorney-client privilege. I simply cannot, I feel in upholding my obligation to my client to uphold that privilege, cannot reveal any more. I avow to the Court it is a conflict that I have personally because of the situation with the attorney-client privilege.

THE COURT: If other competent, ethical counsel is appointed, would he not have the same problem?

[DEFENSE COUNSEL]: Possibly not, Your Honor. Possibly not.

THE COURT: I fail to understand.

[DEFENSE COUNSEL]: I don't think I can go into it in any more detail than that, Your Honor, because of the nature—it is basically a communication privilege. I simply can't go into it any further.

[PROSECUTOR]: I have nothing to say, Your Honor. I don't think I should involve myself in the relationship between Mr. Lavoni and Mr. Jefferson.

THE COURT: Without further information, the court will deny defense counsel's motion. We will proceed at 2:00 p. m. this afternoon."

It is not clear that the trial judge fully grasped the implications of counsel's statements at this time. But the court was told that while counsel could not advise it of the exact nature of the conflict which had developed, "the defendant insists on testifying" and counsel felt "that he cannot." Since counsel felt that he could not continue and since his concern arose out of communication with his client, an obvious inference arose that appellant was going to perjure himself. Such an inference would eventually have occurred to the trial judge, even if he did not immediately grasp the full implications of counsel's statements. The attempt to withdraw was an unequivocal announcement of the attorney's disbelief of the truthfulness of his client's testimony. Cf. *Lowery v. Cardwell*, 575 F.2d 727 (9th Cir. 1978).

Two further issues which have been raised, first, that there was no factual support for the judgment and, second, that appellant was sentenced in violation of Rule 27.7(c), Arizona Rules of Criminal Procedure, 17 A.R.S., are without merit.

For the reason that the attempted withdrawal of defense counsel was prejudicial to appellant, the order revoking appellant's probation and the sentence predicated thereon are reversed with directions that on remand the revocation of probation be determined by a different judge and for further proceedings consistent with this opinion.

Reversed and remanded.

HAYS and GORDON, JJ., concur.

CAMERON, Justice, dissenting.

I dissent from that portion of the opinion which states:

"The attempt to withdraw was an unequivocal announcement of the attorney's disbelief of the truthfulness of his client's testimony."

The United States Court of Appeals for the Ninth Circuit, in reversing the opinion of this court in *State v. Lowery*, 111 Ariz. 26, 523 P.2d 54 (1974), based upon a lawyer's request to withdraw after he ascertained the defendant was committing perjury on the witness stand, stated:

"The question presented, then, is whether what here occurred amounted to such an unequivocal announcement to the fact finder as to deprive the appellant of due process." *Lowery v. Cardwell*, 575 F.2d 727, 730 (9th Cir. 1978).

A reading of the testimony in the instant case does not lead me to believe that the trial court knew that defense counsel attempted to withdraw because the defendant insisted on perjuring himself. Indeed, as the majority opinion states:

"It is not clear that the trial judge fully grasped the implications of counsel's statements at this time."

I would affirm.

HOLOHAN, V. C. J., concurs.