351 P.3d 357

**STATE of Arizona, Appellee,**

v.

**Douglas Alan CORNMAN, Appellant.**

**No. 1 CA–CR 14–0051.**

Court of Appeals of Arizona, Division 1.

June 2, 2015.

―――――

Arizona Attorney General's Office By Michael T. O'Toole, Phoenix, Counsel for Appellee.

Office of the Legal Advocate By Jill L. Evans, Kingman, Counsel for Appellant.

Judge JON W. THOMPSON delivered the decision of the Court, in which Presiding Judge MAURICE PORTLEY and Judge MICHAEL J. BROWN joined.

## OPINION

THOMPSON, Judge:

¶ 1 Douglas Alan Cornman (defendant) appeals from his conviction and sentence for possession of dangerous drugs for sale, a class 2 felony.[1] Finding no reversible error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On the morning of November 29, 2012, police served a search warrant on defendant's home. Defendant and his wife were the only occupants. After defendant was read his *Miranda* rights, he agreed to speak with the police. Defendant first denied selling methamphetamine, then stated he only sold it to family and close friends. Defendant admitted that he had "a gram left" in his bedroom safe but told the police that his wife had nothing to do with any sales. At the police station, defendant was interviewed again. The following exchange occurred:[2]

Detective: Do you remember your rights that I read to you up there at your house?

Defendant: I remember em.

Detective: Okay do you have any questions?

Defendant: Anything I might say might be used against me in a court of law so I can't say anything more.

Detective: Oh that's up to you, those are your rights and I just wanna, I want to come in here and ask some, get some clarifying questions and ask some clarifying questions. If you ...

Defendant: My wife's okay?

Detective: I'm sorry?

Defendant: My wife okay?

Detective: Oh yeah she's fine. Your wife and your dogs. I know you guys are worried about your dogs.

Additional discussion about how defendant's dogs were being handled then occurred, followed by this exchange:

Detective: Your wife here she's just getting charged with paraphernalia. Um, you know, she admitted to smoking, um, we know she's not the one. We know she's not the big seller, we know you're not a big seller. We know that okay? We know, you know, you told me out there hey you know don't get her involved I was the one selling.

Defendant: Yeah.

Detective: I know you're not a big seller but we have drug buys on you okay?

Defendant: Well who, who was that?

Detective: Well I, an informant.

Defendant: What kind of, what's their name?

Detective: Confidential informant.

Defendant: Confidential, was it like supposedly somebody I sold to or something?

Detective: Yeah a confidential informant bought drugs off of you.

Defendant: They did? That's a lie.

Detective: So on that note.

Defendant: Who was it?

Detective: I can't tell you.

Defendant: Yes you can.

Detective: No I cannot! Then that wouldn't be a confidential informant then would it?

Defendant: I'm gonna find out.

---

1. Defendant does not appeal from his conviction and sentence as to possession of drug paraphernalia (Count 4).

2. We report the dialogue as it was transcribed, without grammatical changes.

The two then discussed how much methamphetamine was found in defendant's safe. After defendant asserted he only had the drug for personal use, the following exchange occurred:

Detective: You just use for—so what you just sell to friends or family friends or people you know well?

Defendant: Yeah.

Detective: How many—okay well I mean how often have you sold in the last week?

Defendant: I don't know not very much.

Shortly thereafter, defendant invoked his right to counsel and the interview was terminated.

¶ 3 Police found 1.3 grams of methamphetamine in defendant's safe, inside a baggie stuffed inside a pill bottle. Five methamphetamine pipes, a digital scale, small unused baggies, a baggie with residue in it, an unloaded gun, and ammunition were also found in defendant's home. Police noted that defendant had a surveillance camera outside his front door.

¶ 4 Before trial, defendant filed two motions. The first motion sought to suppress statements defendant made to police after he said he remembered his rights and "anything I might say might be used against me in a court of law so I can't say anything more." The second was a motion in limine to preclude the admission of evidence of both the existence of the search warrant and the basis for the search warrant. After an evidentiary hearing, the trial court denied the motion to suppress defendant's statements, finding defendant had not clearly invoked his *Miranda* rights and the statements were voluntarily given and admissible. On the motion in limine, the trial court ruled that the fact that there was a search warrant was admissible, but the evidence in support of the warrant was not.

¶ 5 At trial, among other witnesses, the detective and defendant testified. The police station interview was played with no objection. During his testimony, the detective spoke at length about how methamphetamine is used and sold in Mohave County. He testified that digital scales, unused jewelry bags, surveillance cameras and guns are commonly found where drug sales are occurring. The detective testified that in this case the digital scale and small unused jewelry bags were found together in a bathroom drawer. The detective testified that a monitor over defendant's bedroom safe displayed the images from the exterior surveillance camera.

¶ 6 Defendant admitted to personal use of methamphetamine, but denied selling it. He stated he had said "yeah" to the question "you just sell to friends or family friends or people you know well" because his wife was sick and he didn't want her to go to jail. Defendant explained that the small baggies were used for his wife's fingernail accessories, that the gun had been given to him the day before the event, and that the surveillance camera was to watch his father-in-law's garage because people had been stealing from it.

¶ 7 Defendant was convicted of possession of dangerous drugs for sale and sentenced to a mitigated term of five years in prison. Defendant timely appealed.

### ISSUES ON APPEAL

¶ 8 On appeal, defendant makes five assertions of error:

a. That the trial court erred in denying defendant's motion to suppress his statements;

b. That the trial court abused its discretion by failing to redact the detective's statements that police had "buys" by a confidential informant, thereby, allowing the state to "backdoor" evidence of a confidential informant;

c. That the trial court erred in failing to give a corpus delicti "corroboration instruction;"

d. That there is insufficient evidence to support his conviction for possession of dangerous drugs for sale; and

e. That the trial court erred in admitting a PowerPoint presentation as demonstrative evidence when it had not been disclosed before trial.

**354**

## DISCUSSION

### A. Motion to Suppress

■ ¶ 9 Defendant argues that the trial court erred in denying his motion to suppress the statements he made at the police station after he stated "anything I might say might be used against me in a court of law so I can't say anything more." The state asserts that defendant did not unambiguously invoke his right to remain silent. The state further argues that even if that ruling was error, it was harmless. To this end, the state asserts defendant did not object to defendant's similar statements to the detective at his house and, because defendant testified, the police station statements would have been available for impeachment purposes.

■ ¶ 10 We review the denial of a motion to suppress under an abuse of discretion standard and will only reverse when there is clear error. *State v. Carter*, 145 Ariz. 101, 110, 700 P.2d 488, 497 (1985). In reviewing a ruling on a motion to suppress, we view the facts in the light most favorable to upholding the trial court's ruling. *State v. Sheko*, 146 Ariz. 140, 141, 704 P.2d 270, 271 (App.1985).

¶ 11 After an evidentiary hearing, the trial court determined defendant did not unambiguously invoke his *Miranda* rights. In coming to this conclusion, the trial court, after testimony and an in camera review of the interview, found that this was not a case of the officer wearing down a defendant after an invocation because the detective spent more of the remaining interview answering defendant's questions than the defendant spent answering the detective's questions. The trial court found that the detective spent "a couple of minutes" answering defendant's questions after defendant stated "anything I might say might be used against me in a court of law so I can't say anything more" before the detective asked his first question. The record supports the trial court's ruling that defendant did not unambiguously invoke his right to remain silent under *Miranda*

and, therefore, we affirm. *See Berghuis v. Thompkins*, 560 U.S. 370, 381, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) ("If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights") (quoting *Davis v. United States*, 512 U.S. 452, 461–62, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)).

### B. Confidential Informant

■ ¶ 12 Defendant next argues the trial court abused its discretion by failing to redact from the police station interview the detective's statement that they had "buys" by a confidential informant. Defendant claims this violated the Confrontation Clause because it constituted a "backdoor" for the police to introduce evidence supporting the search warrant that the trial court had previously ruled inadmissible.

¶ 13 Before the trial court, defendant filed a very short motion that cited no authority for the requested redaction, saying only that discussion of the buys was prohibited by the trial court's ruling on the motion regarding the search warrant. The state responded citing *State v. Boggs*, 218 Ariz. 325, 185 P.3d 111 (2008), and arguing that the information was not a violation of the Confrontation Clause even though the informant would not testify, because the information was needed to provide context for defendant's statements.[3] In his reply, defendant argued he would be prejudiced by the admission of this evidence and that this was not a situation in which *State v. Boggs* applied.[4] The trial court denied the motion in limine stating that police may say "things that may or may not be true or may or may not be provable at trial to elicit a response" during interrogations. The jury was given as the standard instructions as well as the following instruction:

---

3. In response to the detective's statement that the police had "drug buys," defendant twice tried to discover who the informant was. Defendant then stated "I'm gonna find out."

4. On appeal defendant, for the first time, specifically argues that the statements relating to buys by a confidential informant violated both Rule 404(b), Arizona Rule of Evidence (Rule 404(b)), and the Confrontation Clause.

Although it is appropriate for officers to use investigative techniques during questioning of the defendant, you must not consider any statements of a law enforcement officer during that questioning unless substantiated by other evidence.

¶ 14 We review evidentiary rulings under an abuse of discretion standard. *State v. Payne*, 233 Ariz. 484, 503, ¶ 56, 314 P.3d 1239, 1258 (2013). We review challenges under the Confrontation Clause de novo. *Boggs*, 218 Ariz. at 333, ¶ 31, 185 P.3d at 119. We presume the jury followed the jury instructions. *See Jimenez v. Starkey*, 85 Ariz. 194, 196, 335 P.2d 83, 84 (1959).

¶ 15 In *State v. Boggs*, another Confrontation Clause case, our Supreme Court held there was no error in the trial court's admission of a videotaped interrogation for context rather than for the truth of the matter asserted. 218 Ariz. at 334, ¶¶ 32–34, 185 P.3d at 120. Because the state introduced this part of the interview to provide context for defendant's answers to statements regarding buys, we cannot find error. *See id.* Similarly, although defendant also cites Rule 404(b), that provision only restricts the admission of evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." Under Rule 404(b), "[e]vidence relevant for any purpose other than showing propensities to act in a certain way remains admissible." *State v. Connor*, 215 Ariz. 553, 563, ¶ 32, 161 P.3d 596, 606 (App.2007) (citation omitted). Defendant has not shown the trial court abused its discretion in the face of the stated reason for the introduction and the limiting instruction provided to the jury.

### C. Corpus Delicti "Corroboration Instruction"

¶ 16 Defendant next asserts that the trial court erred in failing to give either this corpus delicti "corroboration instruction:"

Evidence has been presented that the Defendant may have admitted that he possessed dangerous drugs for sale as described in the Indictment. You may not convict the Defendant solely upon his own uncorroborated statement or alleged admission,

or this instruction:

The guilt of a defendant in a criminal action cannot lawfully be established solely by evidence of a confession, or of an admission, or by both, made by him on an occasion or occasions other than this trial.

¶ 17 "The purpose of jury instructions is to inform the jury of the applicable law." *State v. Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App.1996). We review the decision of whether to give a jury instruction for an abuse of discretion. *State v. Forde*, 233 Ariz. 543, 566, ¶ 90, 315 P.3d 1200, 1223 (2014).

¶ 18 We previously ruled in *State v. Jones* that whether there is a corpus delicti is a legal analysis for the judge. 198 Ariz. 18, 23, ¶ 13, 6 P.3d 323, 328 (App.2000). Support for our holding in *State v. Jones* and its rationale may be found in *U.S. v. Dickerson*, 163 F.3d 639, 642 (D.C.Cir.1999) ("the jury need not be separately instructed on the issue for it is akin to other admissibility issues, and therefore the trial judge alone decides whether the corroboration test has been met"). We do not instruct juries on particular rules of evidence but rather to provide guidance on how to evaluate evidence. *See id.* at 641–43; George E. Dix et al, McCormick on Evidence, 145 (Kenneth S. Brown ed., 6th ed.) ("Juries, of course, are to evaluate the credibility of confession evidence and the sufficiency of the evidence as a whole, but the corroboration rule does not add anything specific to the jury's consideration of these matters.").

¶ 19 The trial court correctly determined that no jury instruction was required on the corroboration rule. The trial court knew that there was evidence, other than defendant's statements, to corroborate defendant's intent to sell including the small clean baggies, the scale, the surveillance camera and the gun, all of which the detective testified are the types of objects commonly found where drugs are offered for sale.

¶ 20 Further, the jury was adequately instructed as to how it would evaluate all the evidence, including the defendant's state-

**356**

ments and the other information tending to establish the intent to sell. Those instructions included that they must find the facts from the evidence produced in court, to consider all the evidence in light of reason, common sense and experience, what circumstantial evidence is, how to evaluate testimony, including the defendant's statements, and the burden of proof. Explanation of the requirements of the corpus rule was not needed for the jury to fairly evaluate the evidence supporting the sale of dangerous drugs charge. Given the fact that the jury received an adequate legal instruction on the matter, we find no error.

### D. Insufficient Evidence

¶ 21 Defendant asserts that there is insufficient evidence to support his conviction for possession of dangerous drugs for sale. "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto–Fong,* 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (citation omitted). We review the sufficiency of evidence only to determine if substantial evidence existed to support the jury verdict. *See Hutcherson v. City of Phoenix,* 192 Ariz. 51, 53, ¶ 13, 961 P.2d 449, 451 (1998). Substantial evidence is "more than a 'mere scintilla' " of evidence that "reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *State v. Stroud,* 209 Ariz. 410, 411–12, ¶ 6, 103 P.3d 912, 913–14 (2005) (citations omitted). In determining whether such evidence exists, we view the facts in the light most favorable to sustaining the verdict. *Id.*

¶ 22 Between defendant's admission to the police that he sold methamphetamine and the corroborating evidence in the form of scales and the like, sufficient evidence supports the conviction.

### E. PowerPoint Presentation

¶ 23 Finally, defendant claims that the trial court erred in admitting the state's PowerPoint presentation as demonstrative evidence when it had not been disclosed before trial. Defendant asserts that the presentation was prejudicial because it did not accurately reflect the facts of his case. Specifically, defendant objected to items such as the slide showing large quantities of methamphetamine when his case concerned only 1.3 grams. The state responded that the presentation had been prepared just that morning and it was being used demonstratively to accompany the detective's "dry" testimony. During a bench conference, the trial court examined the slides. The court found it "clear that none of the [slides] are from this case." A break was taken to allow defendant to review the presentation and make objections.

¶ 24 Eventually, the presentation was held to be admissible because the relevance outweighed any prejudice to defendant, as long as the state made clear that the slides were not from this case. The state so advised the jury. Further, the court required the state to lay additional foundation for the presentation, which it did.

¶ 25 We examine defendant's assertion of error here under a very deferential abuse of discretion standard. *See Payne,* 233 Ariz. at 503, ¶ 56, 314 P.3d at 1258. Because the jury was told the photos were "not part of this case" and the state laid further foundation for the demonstrative nature of the presentation, we can find no error in their admission. The trial court is affirmed.

### CONCLUSION

¶ 26 For the above stated reasons, defendant's conviction is affirmed.