NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARTIN QUEZADA ESTEVEZ, *Appellant.*

No. 1 CA-CR 19-0037
FILED 2-13-2020

Appeal from the Superior Court in Yuma County
No. S1400CR200801584
The Honorable Brandon S. Kinsey, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Eugene Marquez
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Diane M. Johnsen joined.

_____

**H O W E**, Judge:

¶1        Martin Estevez appeals his conviction of second-degree murder and the trial court's award of extradition costs to the Yuma County Sheriff's Office. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        In 2004, Estevez was living with his girlfriend C.G., and his two children, K.E., then 6, and M.E., then 3. C.G. also had a third child, J.M., then 13, who lived with them. One afternoon in February 2004, while the children were with a sitter, Estevez was at his neighbor's house when he saw C.G. return home from work. Estevez went home, took C.G.'s phone and then returned to his neighbor's house. C.G. followed him to the neighbor's and threatened to call the police if Estevez did not give her back the phone. She then took her phone from Estevez and returned home. Estevez followed her. In the meantime, the sitter had left with all three children to take J.M. to her soccer game.

¶3        When the sitter returned with K.E and M.E, Estevez met them at the front door and asked the sitter to take the children to the neighbor's house. Before the sitter could do so, K.E. slipped inside the door and saw C.G. lying on the back patio with blood on the side of her mouth. Estevez told K.E. that C.G. must have hurt herself in the bathroom. He then brought K.E. back to the front of the house, and the sitter took the children to the neighbor's house. K.E. told the sitter about seeing C.G.'s body, then, accompanied by the neighbor, they went to pick up J.M. from soccer.

¶4        After the sitter brought J.M. back to the neighbor's house, J.M. went home to look for C.G., but no one was home. J.M. found C.G.'s wallet and keys, which J.M. later told police she always carried with her. J.M. called Estevez, who said that he was out buying beer and claimed that he did not know where C.G. was. After 45 minutes, J.M. called Estevez again, and Estevez said that he was almost home. Estevez did not arrive, however,

for another 30 minutes. Once he returned home, Estevez called the police after J.M. told him that if he did not do so, she would.

¶5 When police arrived, Estevez said C.G. had left after an argument over her cell phone. Police brought in a cadaver dog, which alerted on Estevez's truck. When police interviewed Estevez again, he admitted that he had lied when he told K.E. that C.G. had hurt herself in the bathroom and admitted that K.E. was telling the truth when she said she had seen C.G.'s body on the patio. When asked if he was being truthful about having nothing to do with C.G.'s disappearance, Estevez shook his head no, but said he was being truthful. Estevez was not charged with any crime at that time. Two months later, Estevez sold the house and moved to Mexico. C.G.'s body was found more than a year later on a farm in Dome Valley; she was wearing blue jeans and a red shirt, the same clothes the children last saw her wearing.

¶6 Police contacted Immigration and Customs Enforcement ("ICE"), which sent a summons to Verizon seeking Estevez's cell phone subscriber information. Police also issued a separate grand jury subpoena to Verizon seeking the same information, as well as Estevez's historical Cell Site Location Information ("CSLI"). After Verizon produced only limited information about the account, police obtained and served a court order directing Verizon to produce the CSLI. The CSLI information that Verizon provided showed that after Estevez left the house the night C.G. disappeared, his phone was used in Dome Valley, where C.G.'s body was later found. In December 2008, a grand jury returned a second-degree murder indictment for Estevez. A warrant was issued for his arrest, and he was extradited to Yuma County from San Diego.

¶7 Before trial, Estevez moved to suppress the CSLI, arguing the CSLI was obtained without a warrant and in violation of 18 U.S.C. § 2703(d). The trial court summarily denied the motion without taking evidence. After an eight-day trial, the jury found Estevez guilty of second-degree murder and found emotional harm to C.G. and her three children as aggravating factors. The trial court sentenced Estevez to an aggravated term of 22 years' imprisonment with 297 days' presentence incarceration credit. The trial court also ordered Estevez to pay $2,000 in restitution to the Yuma County Attorney's Office and imposed a $414.08 fine to reimburse the Yuma County Sheriff's Office for its extradition costs. Estevez timely appealed.

**DISCUSSION**

**¶8**        Estevez argues that the trial court abused its discretion when it denied his motion to suppress the CSLI based on the "good faith exception" to the Exclusionary Rule. We review the denial of a motion to suppress for an abuse of discretion and "view the facts in the light most favorable to upholding the trial court's ruling." *State v. Cornman*, 237 Ariz. 350, 354 ¶ 10 (App. 2015). When no evidentiary suppression hearing is held, we draw our facts from the uncontested material appended to the suppression motion as well as the evidence presented at trial. *State v. Navarro*, 241 Ariz. 19, 20 ¶ 2 n.1 (App. 2016).

**¶9**        When the evidence involves a search or seizure, the State's burden of proving the lawfulness of its acquisition of evidence arises when "the defendant alleges specific circumstances and establishes a prima facie case supporting the suppression of the evidence at issue." Ariz. R. Crim. P. 16.2(b). A defendant meets this burden by making allegations that, if proved, would entitle him to suppression. *State v. Peterson*, 228 Ariz. 405, 408 ¶ 9 (App. 2011).

**¶10**        Estevez failed to meet his burden. In his suppression motion, Estevez argued that the CSLI was obtained without a warrant and in violation of 18 U.S.C. § 2703(d). In 2004, a request for CSLI was not considered a search subject to the Fourth Amendment and therefore was not subject to a warrant requirement; the warrant requirement did not arise until recognized by the United States Supreme Court in 2018. *See Carpenter v. U.S.*, 138 S.Ct. 2206, 2220 (2018). When the CSLI records here were obtained, 18 U.S.C. § 2703(c)(1)(A)–(B) permitted a governmental entity to compel a cell phone provider to disclose information pertaining to a subscriber by serving either a warrant or a court order. Here, the State complied with the statute when it served a court order on Verizon for the information.

**¶11**        In his suppression motion, Estevez argued that the summons ICE sent to Verizon did not satisfy 18 U.S.C. § 2703(d). However, he never asserted that the court order directing Verizon to comply with the subpoena by turning over Estevez's CSLI information violated 18 U.S.C. § 2703(d). Further, even if the court order did not satisfy 18 U.S.C. § 2703(d), the suppression of evidence was not an available remedy. *U.S. v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998) (noting that 18 U.S.C. § 2708, entitled "Exclusivity of Remedies," expressly rules out exclusion as a remedy). Thus, Estevez was not entitled to suppression of the CSLI even if he proved the CSLI was obtained in violation of 18 U.S.C. § 2703(d).

¶12         Estevez argues on appeal that the CSLI records were not obtained in good faith because law enforcement caused ICE to issue the summons to Verizon under false pretenses. Verizon did not produce the CSLI pursuant to the ICE summons but produced it pursuant to a court order, which Estevez never challenged in the trial court and does not challenge on appeal.

¶13         Estevez further argues that the State never met its burden of establishing that the good faith exception to the warrant requirement applied. Reliance on binding precedent, however, is a per se application of the good faith exception. *Davis v. U.S.*, 564 U.S. 229, 231 (2011). When the CSLI was obtained from Verizon, binding precedent held that the Fourth Amendment did not prohibit the State from obtaining information that the suspect of an investigation has revealed to a third party. *See U.S. v. Miller*, 425 U.S. 435, 443 (1976). Because Estevez's CSLI was revealed to Verizon, which then conveyed the information to the State pursuant to a court order, the State established that the good faith exception applied.

¶14         Additionally, 18 U.S.C. § 2703(c)(1)(B) allowed the State to obtain the CSLI records with a court order, rather than a warrant, which Estevez did not challenge with the trial court. In sum, Estevez simply did not make allegations in his motion to suppress that, if true, would have entitled him to suppression of the CSLI. *See Peterson*, 228 Ariz. at 408 ¶ 9. Therefore, the trial court properly denied Estevez's motion to suppress.[1]

¶15         Estevez also argues that the trial court lacked jurisdiction to award the Yuma County Sheriff's Office its extradition costs. This Court reviews issues of subject matter jurisdiction de novo. *State v. Flores*, 218 Ariz. 407, 410 ¶ 6 (App. 2008). Contrary to Estevez's argument, the trial court had jurisdiction to award extradition costs. "On conviction of the crime that caused a person to be extradited to this state, the state or political subdivision . . . may recover from the convicted person the actual expenses incurred by the extraditing agency." A.R.S. § 13–3870.02. Estevez was extradited to Yuma County from San Diego to stand trial. After he was

---

[1]         Estevez also argues that the State sought to expand the record on appeal with items not in evidence. This Court, however, granted the State's request to expand the record and the court order requiring Verizon to produce the CSLI was admitted into evidence as Exhibit 56.

convicted, the Yuma County Sheriff's Office was thus entitled to recover the costs of extraditing him. *See* § 13–3870.02.

**¶16** Estevez relies on *State v. Gelden*, 126 Ariz. 232 (App. 1980), for the proposition that a trial court has no jurisdiction to order the recovery of costs for extraditing a defendant. *Gelden*, however, no longer controls whether a trial court may impose the costs of extradition as part of a sentence; it has been superseded by A.R.S. § 13–3870.02. *See State v. Maupin*, 166 Ariz. 250, 251 (App. 1990). As a result, the trial court properly awarded the Yuma County Sheriff's Office its extradition costs.

## CONCLUSION

**¶17** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA