NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SHAWN TERRY SPINK, *Appellant.*

No. 1 CA-CR 22-0390
FILED 4-16-2024

Appeal from the Superior Court in Maricopa County
No.  CR2018-145662-001
The Honorable Roy C. Whitehead, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Law Office of Stephen M. Johnson, Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Anni Hill Foster and Judge Brian Y. Furuya joined.

_____

**H O W E**, Judge:

¶1　　　　Shawn Terry Spink appeals from the seven convictions and sentences resulting from his sexual assault and attempted murder of his ex-wife. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　In 2018, Spink's soon-to-be ex-wife relocated from Indiana to Arizona to restart her life away from him. While she did not disclose her new address, he discovered it, following and stalking her. She became aware of Spink's presence and contacted police about obtaining an order of protection. She also confided her worries to her brother, who called Spink and threatened to kill him.

¶3　　　　Undeterred, Spink formulated a plan to attack his ex-wife. His internet search history from the weeks before the attack included "the fastest way to kill someone . . . what happens when you stab someone in the eye . . . how to keep someone from yelling," and other related phrases. Spink also searched for information on how to rape a woman.

¶4　　　　In September 2018, Spink traveled to his ex-wife's apartment in Phoenix and restrained, stabbed, and sexually assaulted her. She and Spink left the apartment together in her mother's car; she escaped by jumping out of the car while Spink was driving. She suffered numerous injuries from Spink's assault, including an orbital bone fracture, a torn rotator cuff, and permanent blindness in her right eye.

¶5　　　　Spink fled the area but was apprehended in Yavapai County later that day by Yavapai County Sheriff's Office deputies, who were mobilized to assist Phoenix police in the investigation. While being read his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), he insisted that he was framed. He was taken to the Yavapai County Jail for an initial interview by Phoenix police before being extradited to Maricopa County. That initial interview ended when Spink invoked his right to silence by stating "I think we're done here."

¶6        Spink was indicted on charges of attempted murder, sexual assault, kidnapping, three counts of aggravated assault, and unlawful use of means of transportation. The court found him indigent and appointed counsel.

¶7        In early October—while in custody in Maricopa County—Spink asked to speak to the "Maricopa County Police Department" to tell them that he had received death threats from his former brother-in-law. A Maricopa County Sheriff's Office detective came to interview him but did not read Spink any *Miranda* rights, and Spink's counsel was not present. In explaining his complaint that his former brother-in-law had threatened him, he noted that he had "use[d] the zip ties on [his] wife" and "put the knife in her eye." Once the detective understood that he was describing events for which Spink had been arrested, she stated: "Let's not think about that right now. . . . I'm sorry for sort of asking you that. Okay? Um, so are you willing to aim prosecution for the threats?" The detective did not have any knowledge of Spink's case before the interview, which lasted just over twenty minutes.

¶8        Before trial, Spink moved to suppress his statements, claiming that the detective violated *Miranda* and his Sixth Amendment rights under the United States Constitution by not reading him his rights. The court denied the motion, finding that Spink had reinitiated contact with law enforcement and that his statements were voluntary.

¶9        Spink was found guilty on all counts. The jury also found the aggravating factors of emotional harm to the victim, ambush, domestic violence, causing the victim to require surgery, and intentional or knowing infliction of serious physical injury. The trial court sentenced Spink to concurrent terms of imprisonment, the longest of which is a life sentence with possibility of parole after 25 years. Spink timely appealed, and this court has jurisdiction. Ariz. Const. art. II, § 24; A.R.S. § 13–4033(A).

## DISCUSSION

¶10       Spink argues that the trial court erred in denying his motion to suppress, claiming that the police violated *Miranda* and the Sixth Amendment in obtaining his incriminating statements during his interview in jail. We review the denial of a motion to suppress for an abuse of discretion and will reverse only for clear error. *State v. Cornman*, 237 Ariz. 350, 354 ¶ 10 (App. 2015) (citation omitted). "In reviewing a ruling on a motion to suppress, we view the facts in the light most favorable to upholding the trial court's ruling." *Id.* (citation omitted).

¶11 The trial court denied Spink's motion to suppress on the grounds that he had re-initiated contact with law enforcement. *See Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) (holding that after invoking the right to counsel, questioning must cease "unless the accused himself initiates further communication, exchanges, or conversations with the police"). However, the court's analysis did not determine whether *Miranda* applied in the first place.

¶12 *Miranda* applies to custodial interrogations by state agents. 384 U.S. at 455. "Police are free to ask questions of a person who is not in custody without having to give the person any warnings under *Miranda*." *State v. Zamora*, 220 Ariz. 63, 67 ¶ 9 (App. 2009) (citing *Florida v. Bostick*, 501 U.S. 429, 434–35 (1991); *State v. Pettit*, 194 Ariz. 192, 195 ¶ 15 (App. 1998)). "Custodial interrogation" is "[q]uestioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

¶13 "'Custody' for *Miranda* purposes 'is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion.'" *State v. Maciel*, 240 Ariz. 46, 49 ¶ 12 (2016) (quoting *Howes v. Fields*, 565 U.S. 499, 508–09 (2012)). This requires both that one's freedom of action is significantly curtailed and the presence of coercive pressures in the interrogation. *Id.* at 50 ¶ 13. Freedom of movement is significantly curtailed if a reasonable person would not have felt free to terminate the questioning and leave. *Id.* at 50 ¶ 14 (citation omitted). A "coercive atmosphere" is determined by, among other factors, whether the interview takes place in public or isolation, whether the questioning occurred in unfamiliar surroundings, how long the person was interrogated, and the nature of the circumstances that lead to the questioning. *Id.* at 50–51 ¶¶ 17–20.

¶14 Questioning becomes an "interrogation" for *Miranda* purposes if the officer should know that the questioning is reasonably likely to evoke an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). This "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.*; *see also State v. Londo*, 215 Ariz. 72, 74 ¶ 6 (App. 2006).

¶15 Here, Spink was not in custody for *Miranda* purposes because his freedom of movement was not significantly curtailed nor was the questioning coercive. Spink himself voluntarily requested the interview and could have ended it at any time. That the questioning took place in a

jail does not categorically mean that Spink's freedom of movement was restricted. *See Howes*, 565 U.S. at 514–15 (finding that a prisoner's freedom of movement was not restricted where questioning took place in a conference room because he was not restrained and could freely choose to return to his cell). Nor were coercive pressures present—Spink's interview was short and arose not out of his charges but out of his own request to report his brother-in-law's threats. And while the record does not indicate exactly where the interview took place, background noise from other inmates can be heard on the recording, indicating that Spink was not completely isolated. Because Spink was neither denied his freedom of movement nor coerced, the interview was not custodial, and *Miranda* thus did not apply.

¶16        Nor was Spink's interview an interrogation. He was interviewed not as a defendant, but as a victim of a possible crime. The detective's questions were merely tangentially related to Spink's offense, and she steered the discussion back to the threats after Spink revealed details of his crime. Her reaction suggests that she did not reasonably expect Spink to incriminate himself.

¶17        Spink's Sixth Amendment right to counsel did apply, however, because by the time of the October interview, he had been indicted on formal charges. *See State v. Sallard*, 247 Ariz. 464, 468 ¶ 11 (App. 2019). Nevertheless, the right to counsel can be waived by the voluntary reinitiation of contact with law enforcement. *See, e.g., State v. Smith*, 193 Ariz. 452, 459 ¶ 31 (1999) (finding right to counsel waived when a defendant initially requested a lawyer, but subsequently volunteered information after saying "I don't see why I shouldn't just tell you"); *State v. Jones*, 203 Ariz. 1, 5–6 ¶¶ 10–14 (2002), *supplemented*, 205 Ariz. 445, 448–49 ¶¶ 10–14 (2003) (finding right to counsel waived where a defendant requested counsel but returned and confessed an hour later and after speaking with his mother); *State v. Yonkman*, 231 Ariz. 496, 499 ¶¶ 15–17 (2013) (finding right to counsel waived where a defendant invoked the right but requested and voluntarily traveled to a police station for an interview a day or two later).

¶18        Here, Spink's request to speak with a detective several days after initially being read his *Miranda* rights was voluntary and uncoerced. The trial court was well within its discretion in finding he had waived his right to counsel, and his argument accordingly fails.

## CONCLUSION

¶19        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA