NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SHAWN FARIA, *Appellant.*

No. 1 CA-CR 23-0504

FILED 09-24-2024

Appeal from the Superior Court in Coconino County
No. S0300CR202100501
The Honorable Ted Stuart Reed, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Barber Law Group, PLLC, Phoenix
By Bretton Barber
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Angela K. Paton joined.

---

**F O S T E R**, Judge:

¶1        Defendant Shawn Faria appeals his convictions for indecent exposure, aggravated assault, and misdemeanor assault.  He argues the superior court abused its discretion by admitting other acts evidence under Arizona Rule of Evidence 404(c) ("Rule 404(c)") and three segments of an audio-recorded phone call. For the following reasons, this Court affirms.

## FACTS AND PROCEDURAL HISTORY

¶2        In 2013, Faria began a relationship with Ravin and moved in with her that same year. At the time, Ravin had four minor daughters, Jamie[1], Karen, Haley, and Toni; Faria had one minor daughter, Emily. (collectively "the children"). In mid-2014, they all moved from Tucson to the Flagstaff area.

¶3        In 2019, Jamie called Faria's aunt and reported that Faria inappropriately touched Haley, masturbated in front of Jamie and her sisters and exposed himself to Jamie. The aunt recorded the conversation and attempted to send the recording to the Department of Child Safety ("DCS"). But because of its size, she had to send it in segments. She also sent three segments to local law enforcement, which were later admitted at trial. The full conversation was about an hour long, but the three segments were less than a minute each. Sometime after sending the three snippets, the phone with the recording was damaged or destroyed.

¶4        In December 2020, DCS removed the children from the home with assistance from local law enforcement. During forensic interviews a couple of weeks later, each child except Jamie reported Faria routinely spanked, smacked, grabbed, squeezed and pinched their buttocks and

---

[1] This Court uses pseudonyms to protect the identity of victims and witnesses. *See*, *e.g.*, *State v. Agueda*, 253 Ariz. 388, 389, ¶ 2 n.1 (2022); Ariz. R. Sup. Ct. 111(i).

made sexual comments to some of them. Haley also described two separate incidents where Faria molested her in when they lived in Tucson.

¶5         Faria was indicted on twelve charges allegedly committed between 2016 and 2020: five counts of Indecent Exposure in Haley's presence; four counts of Aggravated Assault with a sexual motivation against Haley, Karen, Toni and Emily; two counts of Public Sexual Indecency in Karen's and Jamie's presence; and one count of misdemeanor Assault with a sexual motivation against Karen. The State moved to admit evidence of two acts under Rule 404(c) to show Faria has an abhorrent sexual propensity: molesting Haley in Tucson and regularly touching and squeezing the children's buttocks. Faria moved to suppress the three recorded phone call segments. After an evidentiary hearing addressing both motions, the court granted the State's motion and denied Faria's motion, thus admitting both the other acts evidence and the recordings.

¶6         The jury found Faria guilty of seven counts: two counts of Indecent Exposure, all four counts of Aggravated Assault, and the misdemeanor Assault count. The two Public Sexual Indecency counts were dismissed before the jury's deliberation, and the jury was unable to agree on the remaining counts. The superior court sentenced him to 6 years and 30 days' imprisonment, with 48 days of presentence incarceration credit. Faria timely appealed.

¶7         This Court has jurisdiction under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and 13-4033(A)(1).

## DISCUSSION

¶8         Faria appeals the superior court's admission of the Rule 404(c) evidence. Faria further contends the court erred by failing to give a *Willits* instruction to account for the missing portions of Jamie's recorded phone call. *See State v. Willits*, 96 Ariz. 184, 191 (1964) (allowing a jury instruction that the jury may draw "an inference unfavorable to the prosecution" when the State destroys evidence). This Court reviews the admission of evidence for an abuse of discretion. *State v. Lehr*, 227 Ariz. 140, 147, ¶ 19 (2011) (prior bad acts); *State v. Cornman*, 237 Ariz. 350, 354, ¶ 10 (App. 2015) (motion to suppress). "In reviewing a ruling on a motion to suppress, [this Court] view[s] the facts in the light most favorable to upholding the trial court's ruling." *Cornman*, 237 Ariz. at 354, ¶ 10. "[T]he appellate court considers only the evidence presented at the suppression hearing." *State v. Becerra*,

239 Ariz. 90, 91, ¶ 2 (App. 2016) (citing *State v. Spears*, 184 Ariz. 277, 284 (1996)).

## I.     The superior court properly admitted other acts evidence.

**¶9**          Faria contends that the superior court improperly allowed the State to introduce allegations that he molested Haley in Tucson. Although the court also admitted evidence that Faria frequently touched the children's buttocks, he made no arguments on appeal against the court's admission of that evidence; thus, such arguments are waived. *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007).

**¶10**          "[E]vidence of other bad acts is not admissible to show a defendant's bad character." *State v. Aguilar*, 209 Ariz. 40, 42, ¶ 9 (2004) (citation omitted); *accord* Ariz. R. Evid. 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, [with some exceptions]."). But when a defendant is charged with a sexual offense in a criminal case, "evidence of other crimes, wrongs, or acts may be admitted . . . if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz. R. Evid. 404(c).

**¶11**          To admit such evidence, the State must first provide clear and convincing evidence that the defendant committed the acts. Ariz. R. Evid. 404(c)(1)(A); *State v. Terrazas*, 189 Ariz. 580, 582 (1997) (standard for prior bad acts is clear and convincing evidence). "Clear and convincing evidence creates a high probability that a proposition is true but need not establish that it is certainly or unambiguously true." *State v. Vega*, 228 Ariz. 24, 29, ¶ 19 n.4 (App. 2011) (cleaned up). At the pre-trial hearing, the court admitted and reviewed transcripts[2] and recordings of the children's interviews, including Haley's. During her forensic interview, Haley recounted the Tucson molestation incidents. She stated she was approximately eight years old. "[T]estimony of the victim is a sufficient basis on which to conclude by clear and convincing evidence that the incident occurred." *Id.*; *cf. State v. Williams*, 111 Ariz. 175, 177–78 (1974) (uncorroborated testimony can support a conviction requiring proof beyond a reasonable doubt "unless the story is physically impossible or so incredible that no reasonable person could believe it").

---

[2] Although admitted at the pre-trial hearing, the transcripts were not admitted at trial.

¶12 Faria argues that Haley's allegations should not have been admitted because he was not living with her during the time she alleges he molested her. But this Court has noted that "children cannot easily link experiences to dates or other specific points in time." *State v. Copeland*, 253 Ariz. 104, 113, ¶ 18 (App. 2022). Thus, this Court has been lenient regarding the specificity required of children who are victims of sexual offenses. *See id.* ("noting that the 'true issue' in repetitive molestation cases is credibility"); *State v. Herrera*, 232 Ariz. 536, 546, ¶ 26 (App. 2013) ("And although [the defendant] notes that [the victim] was unable to specify what time of day the first incident occurred, [this Court] agree[s] with the court that her testimony provided sufficient proof that the [prior] Acts occurred." (cleaned up)).

¶13 Faria attempts to distinguish *Vega* by pointing out that Haley did not give sworn, in-person testimony at the evidentiary hearing, thus preventing the court from assessing her credibility. But Faria stipulated to the admission of Haley's recorded interview, and that precludes him from asserting that the admission was error. *State v. Parker*, 231 Ariz. 391, 405, ¶ 61 (2013) (citations omitted).

¶14 Faria next argues the court's findings were inconsistent with the evidence. The court found that the Tucson molestations occurred "when [Haley] was approximately eight years old," or "approximately 2012," and that "[Haley] lived with [Faria] at the time of the alleged other act and continuously since then." During her interview, Haley repeatedly reported the molestation incidents happened at night when she was eight. Although no evidence at the hearing provided her birth month, Haley was 16 years old when she participated in the forensic interview at the end of December 2020. The superior court could have reasonably concluded that the timeline was credible.

¶15 Faria also points to the State's assertion that Faria moved in with Ravin "near the end of 2013," which minimized Haley's credibility. But no witness testified that Faria moved in near the end of 2013, and counsel's statement is not evidence. *See State v. Riley*, 248 Ariz. 154, 191, ¶ 144 (2020). Although Faria argues Jamie's testimony suggested the Tucson molestation was committed by Haley's father, the court also heard evidence that her father was in a coma at some point in 2013. The court could reasonably infer that the 2013 coma predated Faria's contact with Ravin's children. Based on the evidence at the hearing, the court could infer that Faria had the opportunity to molest Haley as alleged. And Haley's account is not "physically impossible or so incredible that no reasonable person could believe it." *Williams*, 111 Ariz. at 177–78. Thus, Haley's

interview report provided clear and convincing evidence that Faria previously molested her. *See Vega*, 228 Ariz. at 29, ¶ 19 n.4.

**¶16**          The court considered the specific factors required for admissibility under Rule 404(c). Ariz. R. Evid. 404(c)(1). It found clear and convincing evidence that Faria committed the acts, that the acts provided a reasonable basis to infer Faria had an abhorrent sexual propensity to commit the charged offenses and that the probative value of admitting such evidence was not substantially outweighed by a danger of unfair prejudice. The superior court did not abuse its discretion in admitting evidence that Faria molested Haley in Tucson.

**II.       The superior court properly admitted the three segments of the recorded phone call.**

**¶17**          Faria contends that the court violated his due process rights by admitting the three recorded phone call segments between Jamie and Faria's aunt. This Court "review[s] the denial of a motion to suppress under an abuse of discretion standard," *Cornman*, 237 Ariz. at 354, ¶ 10, but reviews claims of due process violations *de novo*, *State v. O'Dell*, 202 Ariz. 453, 457, ¶ 8 (App. 2002). Though failure to disclose evidence that seriously impedes the right to a fair trial may violate the due process clause, "the nonproduction of evidence alone . . . will not be presumed a denial of due process." *State, ex rel. Hyder v. Hughes*, 119 Ariz. 261, 263 (1978).

**¶18**          The State must disclose any tangible object or electronically stored information that it has and intends to use at trial. Ariz. R. Crim. P. 15.1(b)(5). Faria claims that the State lost or destroyed the full phone recording and relies on Arizona caselaw saying, "[w]here there is a loss or destruction of evidence, [this Court] will reverse a defendant's conviction if it can be shown (1) bad faith or connivance on the part of the government or (2) that he was prejudiced by the loss of the evidence." *State v. Jefferson*, 126 Ariz. 341, 343 (1980).

**¶19**          But the superior court found no evidence that the State ever possessed the complete audio recording or acted in bad faith. The pre-trial hearing evidence supports that the State never had the full recording. Although Faria's aunt testified that she sent DCS the entire recording, she admitted that she received no confirmation that DCS received it, and the DCS case manager testified that he never received it. The aunt also testified that she never sent the complete recording to the sheriff's office, and a county detective confirmed that neither he nor the sheriff's office ever received the full recording. The State cannot lose or destroy evidence it

never had. And although the aunt's phone containing the recording was destroyed, there was no evidence that the state acted to destroy it.

¶20 Faria fails to show the State lost or destroyed evidence. Nor has he shown the State acted in bad faith or that he was prejudiced. Faria admits in his briefing that "it is impossible to prove whether the loss of this phone call was a result of good or bad faith." And he admitted that "the rest of the two-hour phone conversation has never been obtained by the State." Nothing in the record shows Faria was prejudiced by the lack of the full recording. At trial, both Faria's aunt and Jamie testified that much of the undisclosed portion of the call concerned Jamie's desire to move into the aunt's home, evidence that was not relevant to the charged offenses. Faria could have asked Jamie about the call's contents when she testified at trial. Faria raised no claim that the unavailable recording was exculpatory or would otherwise have assisted Faria in his defense. "Where the nature of the evidence—exculpatory, inculpatory, or neutral—is unknown . . . there can be no showing of prejudice in fact." *State v. Youngblood*, 173 Ariz. 502, 507 (1993).

¶21 The superior court did not abuse its discretion by admitting the three recorded segments of the phone call, nor did it violate Faria's right to due process.

## III. The *Willits* instruction was not required.

¶22 Finally, Faria contends that "there is no doubt a *Willits* instruction was called for" because of the lost phone call. This Court reviews rulings on *Willits* instructions for an abuse of discretion. *State v. Hernandez*, 250 Ariz. 28, 31, ¶ 9 (2020).

¶23 "Generally, a defendant is entitled to a *Willits* instruction if: (1) the [S]tate failed to preserve obviously material and reasonably accessible evidence that could have had a tendency to exonerate the accused; and (2) there was resulting prejudice." *Id.* at ¶ 10. As addressed above, the State cannot fail to preserve something it never had. And Faria "'must do more than simply speculate about how the evidence might have been helpful'; there must be 'a real likelihood that the evidence would have had evidentiary value.'" *Id.* (quoting *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 9 (2014)). As discussed above, there is no evidence that the missing segments of the phone call would have helped Faria's defense. Faria was not prejudiced by the lost phone call.

¶24 The superior court did not abuse its discretion by denying Faria's request for a *Willits* instruction.

## CONCLUSION

¶25     For the reasons above, this Court affirms.



AMY M. WOOD • Clerk of the Court
FILED:     AGFV